**NATIONAL FEDERATION OF FEDERAL EMPLOYEES, LOCAL 1745, Petitioner,**

v.

**FEDERAL LABOR RELATIONS AUTHORITY, Respondent.**

No. 84–1054.

United States Court of Appeals, District of Columbia Circuit.

Argued Dec. 6, 1984.

Decided Sept. 18, 1987.

Suzanne Kalfus, Washington, D.C., with whom H. Stephan Gordon and Catherine Waelder, were on brief, for petitioner.

Steven H. Svartz, Deputy Sol., Federal Labor Relations Authority, with whom Ruth E. Peters, Sol., and Matthew J. Wheeler, Atty., Federal Labor Relations Authority, Washington, D.C., were on brief, for respondent.

Before ROBINSON and STARR, Circuit Judges, and WILKEY, Senior Circuit Judge.[*]

Opinion for the Court filed by Circuit Judge ROBINSON.

SPOTTSWOOD W. ROBINSON, III, Circuit Judge.

In this collective bargaining controversy, we review a decision of the Federal Labor Relations Authority (FLRA) declaring non-negotiable a union proposal that a qualified union member be permitted to serve on an agency panel responsible for development of criteria to be used in rating candidates for promotion. We find no indication that the decision is "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law."[1] We therefore affirm.

I

The case before us arose under the labor-management relations provisions of the Civil Service Reform Act of 1978.[2] This legislation confers upon federal employees the right "to engage in collective bargaining with respect to conditions of employment through representatives chosen by employees...."[3] The scope of the bargaining thereby authorized is not, however, unlimited; Section 7106(a) of the Act re-

---

[*] Senior Circuit Judge WILKEY concurred in the disposition of this case but did not participate in this opinion.

[1] 5 U.S.C. § 706(2)(A) (1982); see notes 18–19 infra and accompanying text.

[2] Civil Service Reform Act of 1978, Pub.L. No. 95–454, tit. VII, § 701, 92 Stat. 1191 (codified as amended at 5 U.S.C. §§ 7101–7135 (1982 & Supp. II 1984)).

[3] 5 U.S.C. § 7102(2) (1982).

serves to agency officials specific management prerogatives, not open to negotiation, including the right to make certain personnel decisions.[4] This power is, in turn, qualified by Section 7106(b), which establishes the negotiability of "procedures which management officials of the agency will observe in exercising any authority under this section."[5] These statutory directives frame the dispute over negotiability here presented.

In the course of collective bargaining, Local 1745 of the National Federation of Federal Employees advanced a proposal for union representation on a panel charged with rating and ranking candidates for promotion within the Veterans Administration (VA). A brief review of that agency's procedures is necessary to appreciate the functional significance of the union's proposition.

Evaluation of candidates for promotion at VA is conducted in accordance with the federal merit selection process. Applicants for promotion must meet the basic eligibility requirements established by the Office of Personnel Management for the position sought.[6] Promotion panels at the agency then assess the relative qualifications of eligible candidates, using two related measures. The panel first assembles a set of "selective factors" reflecting the specific knowledge, skills and other characteristics required for successful performance of the job to be filled. The panel then utilizes a second system of measurement, called a "crediting plan," to identify the type of candidate experience or education that will satisfy the selective factors in question, and to gauge the weight properly to be accorded each factor in assessing the relative qualifications of the aspirants eligible.

The selective factors and the crediting plans are used together to rate and rank candidates eligible for promotion.[7] Once a pool of best qualified candidates is constituted, their names are referred to the agency's "selecting official,"[8] who may choose any candidate from the list or any candidate from another "appropriate source."[9] VA's promotion panel, called a rating and ranking panel,[10] currently has a membership of three: a representative of the Office of Personnel and two line officials familiar with the position to be filled.[11]

The union proposal in dispute would substitute a union member for one of these three:

### Union Proposal 1

The Union will appoint a participating member on the Rating Panel. The Union Member will be allowed access to all

---

4. *Id.* § 7106(a), providing in relevant part:
   (a) Subject to subsection (b) of this section, nothing in this chapter shall affect the authority of any management official of any agency—
   \*     \*     \*     \*     \*     \*
   (2) in accordance with applicable laws—
   \*     \*     \*     \*     \*     \*
   (C) with respect to filling positions, to make selections for appointments from—
   (i) among properly ranked and certified candidates for promotion; or
   (ii) any other appropriate source....

5. *Id.* § 7106(b)(2).

6. Brief for Petitioner at 7; Brief for Respondent at 4 n. 3.

7. See Brief for Petitioner at 7–9; Reply Brief for Petitioner at 2–3; Brief for Respondent at 4–5. While the two measures have at times been jointly referred to as a "crediting plan," we find the discrete characterizations here employed by the parties and FLRA itself, see text *infra* at

notes 58–59, helpful in clarifying the issues posed in this case.

8. Brief for Petitioner at 9 (quoting Federal Personnel Manual Supplement 335–1, App. B, § B–4e).

9. See note 4 *supra.* The selecting official may, for example, choose a candidate from a reemployment priority list, or hire an eligible handicapped person or a veteran. Brief for Petitioner at 9 (citing Federal Personnel Manual Ch. 335, § 1–4 (Requirement 4)).

10. The terms "promotion panel," "rating panel," and "rating and ranking panel" appear to have been used interchangeably in this case. See *National Fed'n of Fed. Employees, Local 1745 & Veterans Admin.*, 13 F.L.R.A. No. 91, 543, 544 (1983); Brief for Respondent at 3 n. 2.

11. *National Fed'n of Fed. Employees, Local 1745 & Veterans Admin., supra* note 10, 13 F.L.R.A. No. 91 at 544.

personnel records of employees being evaluated by the Promotion Panel.

If there are no qualified SME's [subject matter experts] available as a Union Member on the Rating Panel, then the Union Member will act as an Observer rather than a participating member.

Neither a Panel Member nor an Observer can be an applicant for a position under consideration by the Panel. Information discussed in Panel Meetings will be considered confidential and will not be discussed outside these meetings.[12]

By the terms of the proposal, then, a union member would sit on the panel charged with the obligation of formulating the selective criteria to be used in rating candidates for promotion. Union participation in developing crediting-plan criteria for evaluation of the experience and education of qualified candidates for promotion is not at issue in this case.[13]

The union submitted the proposal in question to VA, which refused to negotiate on the ground that it was nonnegotiable under Section 7106. The union then turned to FLRA for a negotiability determination,[14] and eventually FLRA issued its decision and order on the negotiability issues.[15]

FLRA reviewed the union's proffer and found it to be nonnegotiable, reasoning that it directly interfered with exercises of management's exclusive power under Section 7106(A)(2)(C) to select candidates for appointment.[16] In this court, the union contends that FLRA erred in this determination. First, the union argues, FLRA misconstrued that section in holding that management's privilege to select candidates for appointment extends to formulation of the criteria by which they are to be evaluated. Furthermore, the union argues, even if Section 7106(a)(2)(C) is to be so construed, the proposal remains negotiable under Section 7106(b)(2) because it is purely procedural in character.[17]

## II

Judicial scrutiny of FLRA orders is governed by Section 7123(c) of the Act, which specifies that the review shall be conducted on the record in accordance with Section 706 of the Administrative Procedure Act.[18] That familiar provision directs courts to invalidate only such agency action as is "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law."[19] Further guidance is afforded by the Supreme Court's decision in *Bureau of Alcohol, Tobacco, and Firearms v. FLRA*,[20] which cautions that FLRA "is entitled to considerable deference when it exercises its 'special function of applying general provisions of the [Act] to the complexities' of federal labor relations."[21] The respect owed FLRA decisions, while "considerable," is not, however, absolute. Reviewing tribunals, the Court said, should defer to FLRA's "reasonable and defensible constrictions," but should not " 'rubber-

---

12. *Id.* at 543.

13. See Reply Brief for Petitioners at 2; Brief for Respondent at 4 n. 5. Union involvement in the construction of crediting plans has been held negotiable by FLRA. See *National Treasury Workers Union & United States Customs Serv.*, 11 F.L.R.A. No. 47, 209, 209–213 (1983).

14. See 5 U.S.C. § 7117(c) (1982); Brief for Petitioners at 9–10; Letter from Robert Burton, National Federation of Federal Employees, Local 1745, to FLRA (Apr. 27, 1981), Appendix for Petitioner (P. App.) 1.

15. *National Fed'n of Fed. Employees, Local 1745 & Veterans Admin., supra* note 10.

16. *Id.*

17. Brief for Petitioner at 11–12.

18. 5 U.S.C. § 7123(c) (1982).

19. *Id.* § 706(2)(A).

20. 464 U.S. 89, 104 S.Ct. 439, 78 L.Ed.2d 195 (1983).

21. *Id.* at 97, 104 S.Ct. at 444, 78 L.Ed.2d at 202 (quoting *NLRB v. Erie Resistor Corp.*, 373 U.S. 221, 236, 83 S.Ct. 1139, 1150, 10 L.E.2d 308, 319 (1963)). Accord, *Defense Logistics Agency v. FLRA*, 244 U.S.App.D.C. 22, 32, 754 F.2d 1003, 1013 (1985); *Equal Employment Opportunity Comm'n v. FLRA*, 240 U.S.App.D.C. 218, 223, 744 F.2d 842, 847 (1984), *cert. granted*, 472 U.S. 1026, 105 S.Ct. 3497, 87 L.Ed.2d 629 (1985), *cert. dismissed*, 476 U.S. 19, 106 S.Ct. 1678, 90 L.Ed.2d 19 (1986); *Department of Defense v. FLRA*, 212 U.S.App.D.C. 256, 277, 659 F.2d 1140, 1161 (1981), *cert. denied*, 455 U.S. 945, 102 S.Ct. 1443, 71 L.Ed.2d 658 (1982).

stamp ... administrative decisions that they deem inconsistent with a statutory mandate or that frustrate the congressional policy underlying a statute.' " [22] These pronouncements reaffirm in the federal collective bargaining context, the general principle that courts will give great weight to "an interpretation of a statute by the agency entrusted with its administration ... '[t]he construction of a statute by those charged with its execution should be followed unless there are compelling indications that it is wrong.' " [23]

### III

On our review of FLRA's negotiability determination, we turn first to the language of Section 7106 of the Act, which enumerates the management prerogatives exempt from bargaining. Protected is the authority of any management official "to fil[l] positions, to make selections for appointments from—(i) among properly ranked and certified candidates for promotion; or (ii) any other appropriate source...." [24] By FLRA's interpretation, management's statutorily-protected right to make selections for appointments includes "the discretion to determine, as an integral aspect of the process of selection, the selective factors (i.e., the knowledges, skills and abilities necessary to successful performance of the work of the position) to be utilized in a merit promotion plan." [25] By contrast, the union construes Section 7106 quite literally, as excepting from collective bargaining only the privilege of

making final selections—or what it calls "the ultimate choice regarding the promotion selection"—while leaving negotiable the question of the standards and procedures by which candidates for promotion are to be rated and ranked. [26]

We sustain FLRA in its holding that the right of selection conferred on management by Section 7106(a)(2)(C) extends to the entire selection process, as conducted in accordance with subsections (c)(i) and (ii). FLRA's construction parallels its reading of Section 7106(a)(2)(A), which we upheld in *Department of Defense v. FLRA*.[27] We there affirmed FLRA's conclusion that the appointive power reserved to management by Section 7106(a)(2)(A) comprehends "more than a right to say yes or no to an employee who is identified for assignment under selection standards negotiated with a union." [28] Here we find equally reasonable FLRA's determination that the right of selection safeguarded by Section 7106(a)(2)(C) is more than the right to select candidates for promotion from a pool whose composition is the teamwork of the agency and the union. In this instance, no less than in *Department of Defense*, it was entirely logical for FLRA to conclude that adoption of the "constructively literalist construction" [29] proffered by the union would eviscerate the authority preserved for management by Section 7106.[30] FLRA's interpretation of the statute is, moreover, responsive to the congressional mandate that the bargaining provisions of the Act be implemented "in a manner consistent with the

**22.** *Bureau of Alcohol, Tobacco, & Firearms v. FLRA, supra* note 20, 464 U.S. at 97, 104 S.Ct. at 444, 78 L.Ed.2d at 202 (quoting *NLRB v. Brown*, 380 U.S. 278, 291, 85 S.Ct. 980, 988, 13 L.Ed.2d 839, 849 (1965)). Accord, *American Fed'n of Gov't Employees v. FLRA*, 242 U.S.App.D.C. 295, 298, 750 F.2d 143, 146 (1984).

**23.** *Department of Defense v. FLRA, supra* note 21, 212 U.S.App.D.C. at 277–278, 659 F.2d at 1161–1162 (quoting *Miller v. Youakim*, 440 U.S. 125, 145 n. 25, 99 S.Ct. 957, 969 n. 25, 59 L.Ed.2d 194, 209 n. 25 (1979), quoting in turn *Red Lion Broadcasting Co. v. FCC*, 395 U.S. 367, 381, 89 S.Ct. 1794, 1802, 23 L.Ed.2d 371, 384 (1969)) (citations omitted). Accord, *ITT World Communications v. FCC*, 233 U.S.App.D.C. 205, 214, 725 F.2d 732, 741 (1984); *Motor Vehicle Mfrs. Ass'n v. Ruckelshaus*, 231 U.S.App.D.C. 240, 246, 719 F.2d 1159, 1165 (1983); *National*

*Wildlife Fed'n v. Gorsuch*, 224 U.S.App.D.C. 41, 51–52, 693 F.2d 156, 166–167 (1982).

**24.** 5 U.S.C. § 7106(a)(2)(C) (1982).

**25.** Brief for Respondent at 10.

**26.** See Brief for Petitioner at 26; see also *id.* at 15.

**27.** *Supra* note 21.

**28.** 212 U.S.App.D.C. at 275, 659 F.2d at 1159.

**29.** *Id.*

**30.** The union contends that, unlike other privileges of management enumerated in § 7106, the right to select for appointment "is qualified by" subsections (C)(i) and (ii), which authorize management to make the selection from "prop-

requirement of an effective and efficient government." [31]

## IV

■ Having sustained FLRA's holding that the union's proposal bears on the exercise of a right statutorily reserved to management, we turn to Section 7106(b)(2) to ascertain whether it is nonetheless negotiable. That section permits negotiation of the "procedures which management officials of the agency will observe in exercising any authority under this sec-

erly ranked and certified candidates" or "any other appropriate source." See Brief for Petitioner at 13 (quoting 5 U.S.C. § 7106(a)(2)(C)(i) and (ii) (1982)) (emphasis omitted). Contrary to the union's suggestion, we read subsections (C)(i) and (ii) as reserving to management full discretion in exercising its selection right to choose from either category of eligible candidates, see note 9 *supra.* Accord, *Local 32, American Fed'n of Gov't Employees v. FLRA,* 234 U.S.App.D.C. 292, 295, 728 F.2d 1526, 1529 (1984); see also *American Fed'n of Gov't Employees, Local 2782 v. FLRA,* 256 U.S.App.D.C. 101, 104–105, 803 F.2d 737, 740–741 (1986). Of course, as with all management prerogatives mentioned in § 7106(a)(2), the right to select for appointment is constrained by the condition that it be exercised "in accordance with applicable laws," as obviously it must be even without written words to that effect.

It is not enough, however, for the union to point to limitations on management's power to select as ground for the negotiability of its proposal. The union must demonstrate further that the limitation was intended to qualify management authority in favor of union participation; and that the participation proposed for the union will not expand any statutory restriction on management. In *Equal Employment Opportunity Comm'n v. FLRA, supra* note 21, for example, we sustained a FLRA decision holding negotiable a union plan to make grievable any failure of management to comply with applicable laws in exercising its authority under § 7106(a)(2)(B) to contract out. Like FLRA, we reasoned that the plan did not impair management rights because it merely offered a procedure for enforcing compliance with existing statutory constraints on the agency's power. 240 U.S.App.D.C. at 224–227, 744 F.2d at 848–851. It is readily apparent that the union's present proposal finds no support in these precedents. Despite the union's attempt to use limitations on management's right to select for appointment-selection authority as evidence of negotiability of the proposal, the latter has nothing to do with enforcement of statutory restrictions on management's rights under § 7106(a)(2)(C), but rather involves union input into discretionary judgments reserved for management by that section.

**31.** 5 U.S.C. § 7101(b) (1982). We have found efficiency in government to be a key policy promoted by the exemption from bargaining afforded the management rights enumerated in § 7106. See *National Treasury Employees Union v. FLRA,* 223 U.S.App.D.C. 364, 371–372, 691

F.2d 553, 560–561 (1982). If Congress deemed it in the interest of "an effective and efficient government" to exclude from bargaining management's authority to make selections for appointment, it is reasonable to assume that Congress intended to insulate not simply the ultimate choice of candidates for promotion but also the judgments implicating the criteria on which promotion decisions are to be based.

Notwithstanding the congressional decision to exempt from bargaining particular prerogatives of management in the interest of efficiency, the union contends that the legislative history of the Act buttresses a narrow construction of the § 7106(a)(2)(C) right to select for appointment. The union relies upon a statement which Representative Udall, the principal author of the legislation, offered during House debate to explain that the section was designed

> to preserve as bargainable (to the extent permitted by applicable laws and regulations) the standards, criteria, and procedures for establishing promotion certificates, while assuring management's right to make the actual selection from the certificate....

124 Cong.Rec. 29,174 (1978). As we observed in *American Fed'n of Gov't Employees v. FLRA,* 223 U.S.App.D.C. 376, 691 F.2d 565 (1982), *cert. denied,* 461 U.S. 926, 103 S.Ct. 2085, 77 L.Ed.2d 297 (1983), however, the Udall statement reflects a commitment to retain the negotiability of arrangements subject to a promotion-certificate scheme apparently no longer in current use under the Federal Personnel Manual. 223 U.S. App.D.C. at 381–382, 691 F.2d at 570–571. That scheme allowed employee participation in the development of promotion plans and guidelines but limited it in several significant respects, one of which was exclusion of employee participation in formulation of qualification standards or evaluation methods. *Id.* at 382, 691 F.2d at 571. Thus, whether we construe Representative Udall's remarks narrowly, as evincing an intention to preserve the promotion-certificate scheme, or more broadly, as approving bargaining over proposals for employee participation of a similar character, his statement does not clarify the status of the proposal here in issue. That proposal contemplates employee involvement in the development of qualification standards of the type expressly excluded from the promotion-certificate scheme, and for this reason the union's effort to buttress the negotiability of its proposal by resort to the legislative history of § 7106(a)(2)(C) is wholly unavailing. Cf. *United States Customs Serv. v. FLRA,* 739 F.2d 829, 833 (2d Cir.1984).

tion....."[32] FLRA employs a two-pronged analytical process which in *Department of Defense v. FLRA* [33] we approved, to determine whether proposals pertain to procedures negotiable within the meaning of Section 7106(b)(2), or instead impinge upon rights set apart for management by Section 7106(a).

As we acknowledged in *Department of Defense*, the substance-procedure distinction is one ofttimes fraught with difficulty.[34] Charged with drawing such distinctions by Section 7106, and obligated to do so lest the exception for negotiable procedures swallow the exemption from compulsory bargaining accorded management rights,[35] FLRA has developed a workable approach to the problem in the bargaining context. It analyzes a proposal first to determine whether it can easily be seen as purely procedural in nature, or whether ascertainment of its character will be a more complex undertaking. As we observed in *Department of Defense*, this approach makes practical sense:

> There are, on the one hand, cases in which proposals cast in procedural language impinge on substantive management decisions by specifying the criteria

pursuant to which the decisions are to be made. There are, on the other, more nearly "pure" procedures, which have less direct substantive repercussions—for example, procedures for use in determining which employees possess characteristics identified by management as appropriate criteria for choice.[36]

Having made this distinction, FLRA utilizes differing standards for evaluating the two classes of proposals. It treats union proposals concerning "'pure' procedures"[37] as negotiable under Section 7106(b) unless the proposal, if adopted, would prevent the agency from "acting at all."[38] Contrastingly, a proposal whose terms "stand close to the uncertain border between procedure and substance" is deemed nonnegotiable if its adoption would "directly interfere" with management's reserved authority.[39] As we held in *Department of Defense*, FLRA's application of the "direct interference" test to bargaining proposals "having direct substantive repercussions"[40] is entirely reasonable.[41] Our subsequent decisions have adhered to the principles articulated in that opinion[42] and we decline to defect from them here.

**32.** 5 U.S.C. § 7106(b)(2) (1982).

**33.** *Supra* note 21.

**34.** 212 U.S.App.D.C. at 267–268, 659 F.2d at 1151–1152.

**35.** *Id.* at 268, 659 F.2d at 1152. Accord, *National Fed'n of Fed. Employees, Local 615 v. FLRA*, 255 U.S.App.D.C. 263, 265, 801 F.2d 477, 479 (1986).

**36.** *Department of Defense v. FLRA, supra* note 21, 212 U.S.App.D.C. at 268, 659 F.2d at 1152. We subsequently revisited this distinction with an alternate example:

> Proposals to establish seniority as a basis for personnel assignments stand close to the uncertain border between procedure and substance [unlike] a proposal that did not specify the criteria on which disciplinary action should be based, but only designated procedures for determining whether management criteria had in fact been satisfied in a particular instance.

*Id.* at 275, 659 F.2d at 1159 (footnote omitted).

**37.** *Id.* at 268, 659 F.2d at 1152.

**38.** *Id.* at 269, 659 F.2d at 1153.

**39.** *Id.* at 275, 659 F.2d at 1159.

**40.** *Id.* at 268, 659 F.2d at 1152.

**41.** Accord, *American Fed'n of Gov't Employees, Local 2782 v. FLRA*, 226 U.S.App.D.C. 446, 449, 702 F.2d 1183, 1186 (1983) ("[o]ne or another variant of a test looking towards 'direct effect on substantive rights' is a familiar means of separating 'procedure' from 'substance'"). FLRA's double-pronged standard is an appropriate means of effectuating § 7106, which, we have held,

> reflects the basic principle—carried over from the pre-1978 administrative law governing federal labor relations—that although management has a right to make the substantive decisions with respect to certain subjects, it is nonetheless required to negotiate both over procedures for implementing such decisions and over arrangements for employees adversely affected by such decisions.

*Association of Civilian Technicians v. FLRA*, 244 U.S.App.D.C. 151, 158, 756 F.2d 172, 179 (1985) (footnote omitted).

**42.** See *Defense Logistics Council v. FLRA*, 258 U.S.App.D.C. 115, 119, 810 F.2d 234, 237–238 (1987); *American Fed'n of Gov't Employees v.*

FLRA applied the "direct interference" test to the proposal at issue in the case before us. The union argues that FLRA should have applied the "acting at all" test on the ground that the proposal is "purely procedural" and neither "preclude[s] management from exercising substantive authority" nor "prescribes substantive criteria" for the exercise of that authority.[43] We are unable to agree. While the union's proposal does not prescribe any criterion for selection of candidates for appointment, it does advocate placement of a union member on the rating and ranking panel. That panel counts among its responsibilities the determination of the selective factors or core criteria by which candidates for promotion will be evaluated.[44] FLRA could very sensibly conclude that acceptance of the proposal would implicate matters not purely procedural in character. Identification of the qualifications needed for performance of a particular job involves judgments directly affecting the selection ultimately made.[45]

At bottom, the union would have us characterize its proposal as purely procedural because it prescribes no substantive criteria for management decisionmaking.[46] We are further told that the union member it would have sit on the three-member rating and ranking panel would play merely a "participatory" and "noncontrolling" role,

and thus could not possibly interfere with management's reserved authority.[47]

We find this characterization of the union's proposal fundamentally and fatally flawed. The notion that the union member of the panel would play a "non-controlling" role rests on the counterintuitive assumption that the two nonunion panel members will always agree, and could never be persuaded by the union member's "participatory" activity. But it is evident that any participation by the union member portends influence on the nonunion members and, more directly, on the panel's final outcome. It is easily conceivable that the union member could, at least sometimes, inspire the thinking of one or both of the nonunion members, or, at minimum provoke a deadlock between them. Should either of these results follow, the union representative would have assumed the role of decision-dictator or tie-breaker, and the union vote would have become controlling.

Considered from this vantage point, the infirmity in the union's case is apparent. The proposal's restraint in advocating criteria for management decisionmaking does not save it from trespassing on management authority sought to be immunized by Section 7106(a). The management rights statutorily protected are rights to decision by management,[48] and, the proposal at

---

FLRA, supra note 31, 223 U.S.App.D.C. at 383, 691 F.2d at 572; National Fed'n of Fed. Employees v. FLRA, 220 U.S.App.D.C. 371, 377 n. 8, 681 F.2d 886, 892 n. 8 (1982). In American Fed'n of Gov't Employees, Local 2782 v. FLRA, supra note 41, we held that FLRA erred in using the "direct interference" test to determine the scope of bargaining under § 7106(b)(3) but reaffirmed the test's utility in construing § 7106(b)(2)'s exemption for proposals negotiable because procedural in character. 226 U.S.App.D.C. at 449, 702 F.2d at 1186.

**43.** Brief for Petitioner at 23–30.

**44.** See text supra at notes 7–8.

**45.** Indeed, in Department of Defense, supra note 21, we distinguished proposals that would supply criteria for management decisionmaking from those merely suggesting methods by which decisional criteria identified by management could be applied. See note 36 supra and accompanying text. While the proposal in this case would not supply criteria for management decisionmaking, it urges appointment of a union

member to a panel that will develop such criteria. In this sense, it falls well within the orbit of the union propositions we have identified as intrusions upon management authority reserved by § 7106(a).

**46.** Brief for Petitioner at 24–25, 30.

**47.** Id. at 30, 39.

**48.** This understanding of § 7106 is reflected in various formulations of the direct-interference test, which, we have explained, is aimed at intercepting "proposals cast in procedural language [which] impinge on substantive management decisions," Department of Defense v. FLRA, supra note 21, 212 U.S.App.D.C. at 268, 659 F.2d at 1152, "management discretion," Local 32, American Fed'n of Gov't Employees v. FLRA, supra note 30, 234 U.S.App.D.C. at 295, 728 F.2d 1529; or, "substantive exercises of management authority," American Fed'n of Gov't Employees v. FLRA, supra note 31, 223 U.S.App.D.C. at 383, 691 F.2d at 572. Cf. National Treasury Em-

hand contemplates direct union participation in the decisionmaking process. It would have a union member join in the deliberations of the rating and ranking panel, serving as one of three decisionmakers in that phase of the promotion process, and exposing that process to the consequences we have described. In this light, the union's proposition amounts to nothing less than a bid to share management's decisionmaking authority, even exceeding more modest proposals that FLRA, with our approval, has found to trample on management rights reserved under Section 7106(a).

In *American Federation of Government Employees v. Federal Labor Relations Authority*,[49] we upheld FLRA's conclusion that a proposal that would have afforded the union "an equal voice in the development of performance measures, and ... require negotiation in the event of disagreement," amounted to direct interference with execution of the powers reserved to management by Section 7106. We deemed the proposal in excess of the bounds of compulsory bargaining because it "restrict[ed] management's authority ... by insisting that it be exercised only with union approval."[50] We similarly sustained FLRA's decision to bar negotiation on a

plan that would have made disagreements over the establishment and operation of performance-appraisal systems grievable. As we pointed out, the proposal "would sanction direct challenges to performance standards and critical job elements, and would allow arbitrators to substitute their notions of proper standards and elements for those of management."[51] In the present case, the union proposes not only that management subject its exercise of its statutorily-reserved decisional authority to negotiation or arbitration, but also that it cede part of this decisional authority to the union itself. FLRA could fairly conclude that this is a proposal to which the direct-interference test properly applies, and which is unable to survive scrutiny thereunder.[52] We find FLRA's determination of nonnegotiability "reasonable and defensible," and not " 'inconsistent with [the] statutory mandate.' "[53]

Finally, the union argues, FLRA's application of the direct-interference test in this case is inconsistent with its use of the acting-at-all standard in cases involving "crediting plans [which] set forth the ... weight selected criteria will be given in establishing the relative merit of eligible

---

ployees v. FLRA,* 767 F.2d 1315, 1318 (9th Cir. 1985).

**49.** *Supra* note 31.

**50.** 223 U.S.App.D.C. at 383–384, 691 F.2d at 572–573.

**51.** *Id.* at 384–385, 691 F.2d at 573–574; see also *National Treasury Employees Union v. FLRA, supra* note 48, 767 F.2d at 1318 (proposals which "invit[e] an arbitrator's independent evaluation of managerial designations ... interfere with the prerogative ... expressly reserved to management by statute").

**52.** The union advances a weak argument that its proposal could pass the direct-interference test, but marshals little in support of this claim. The union first asserts that participation in deliberations of the rating panel will not directly interfere with management rights under § 7106(a)(2)(C) because the panel's deliberations do not fall within its compass. See Brief for Petitioner at 32–33. This is a construction of the section we have already rejected. See text *supra* at notes 24–31. It is, moreover, an

argument unresponsive to the question at hand, for if the proposal does not bear on the exercise of agency authority protected under § 7106, the direct interference test has no pertinence to its negotiability. The union next contends that FLRA is illogical in subjecting the current proposal to evaluation under the direct-interference test when it analyzes proposals for union participation in development of crediting plans under the acting-at-all standard, which is applied to proposals that are unambiguously procedural in character. See Brief for Petitioner at 33–36. While we note that this argument is equally unresponsive, amounting to little more than a renewed assertion that the proposal is purely procedural and ought to be analyzed under the acting-at-all standard, we nonetheless deem FLRA's differential analysis appropriate. See text *infra* at notes 54–64.

**53.** *Bureau of Alcohol, Tobacco, & Firearms v. FLRA, supra* note 20, 464 U.S. at 97, 104 S.Ct. at 444, 78 L.Ed.2d at 202 (citing *NLRB v. International Ass'n of Bridge Workers,* 434 U.S. 335, 350, 98 S.Ct. 651, 660, 54 L.Ed.2d 586, 598 (1978) (quoting *NLRB v. Brown, supra* note 22, 380 U.S. at 291, 85 S.Ct. at 988, 13 L.Ed.2d at 849)).

candidates for promotions." [54] More specifically, FLRA has characterized such crediting plan determinations as purely procedural,[55] but has noted that the plans it deemed negotiable did "not restrict in any manner management determinations as to ... the knowledge, skills, and abilities which ... personnel must possess in order to do the work. Rather, the proposals would only establish criteria for more precisely evaluating the experience and education of qualified candidates...." [56] As the proposal here at issue concerns participation on a panel charged with making judgments of the sort expressly distinguished, FLRA clearly was at liberty to follow another of its decisions,[57] holding that a proposal for union participation in formulation of those aspects of a promotion plan "involving both 'selective factors' and a 'crediting plan,' [was] outside the duty to bargain." [58] FLRA there distinguished the negotiability of proposals contemplating union participation in the development of selective factors from those involving a union role in the evolvement of crediting plans,[59] just as it did in the instant case.[60] While FLRA might profitably have further elaborated this aspect of its ruling, we think that by explicitly incorporating into the decision under review its earlier reasoning,[61] FLRA made clear enough its view that proposals envisioning union collaboration in the determination of selective factors for candidate rating intrude upon a core element of management's authority to make selections for appointment.[62] Certainly the distinction between developing decisional criteria and crafting "procedures for determining whether management criteria [have] in fact been satisfied in a particular instance" is one we have recognized in reviewing prior FLRA decisions.[63] We realize fully that Section 7106 necessitates judgments on which fair-minded persons may differ, and that resultantly we are to defer to FLRA decisions unless they are arbitrary or otherwise contrary to law.[64] FLRA's decision in this case is a reasonable construction of Section 7106, and one, we think, that serves well the commitments underlying it.

The order under review is accordingly

*Affirmed.*

54. Brief for Petitioner at 34–36.

55. *National Treasury Employees Union and United States Customs Serv.,* 11 F.L.R.A. No. 47, 209, 211–212 (1983).

56. *Id.* at 212.

57. *National Fed'n of Fed. Employees, Local 1497 & Headquarters, Lowry Technical Training Center,* 11 F.L.R.A. No. 92, 565 (1983) [hereinafter cited as *Lowry* ].

58. *National Fed'n of Fed. Employees, Local 1795 & Veterans Admin., supra* note 10, 13 F.L.R.A. No. 91 at 545, (citing *Lowry, supra* note 57).

59. See *Lowry, supra* note 57, 11 F.L.R.A. No. 92 at 567–568; see also *id.* at 572–573.

60. *National Fed'n of Fed. Employees, Local 1745 & Veterans Admin., supra* note 10, 13 F.L.R.A. No. 91 at 545 n. 5.

61. See *id.* at 545.

62. See, e.g., *Lowry, supra* note 57, 11 F.L.R.A. No. 92 at 567–568.

63. See, e.g., *Department of Defense v. FLRA, supra* note 21, 212 U.S.App.D.C. at 275, 659 F.2d at 1159; see also note 36 *supra* and accompanying text.

64. 5 U.S.C. § 7123(c) (1982) (incorporating by reference § 706 of the Administrative Procedure Act); see *Defense Logistics Agency v. FLRA, supra* note 21, 244 U.S.App.D.C. at 32–33, 754 F.2d at 1013–1014; *National Treasury Employees Union v. FLRA, supra* note 31, 223 U.S.App.D.C. at 369–370, 691 F.2d at 558–559.