**NATIONAL TREASURY EMPLOYEES UNION, Petitioner,**

v.

**FEDERAL LABOR RELATIONS AUTHORITY, Respondent.**

No. 85–1320.

United States Court of Appeals, District of Columbia Circuit.

Argued April 24, 1986.

Decided Feb. 6, 1987.

As Amended Feb. 6, 1987.

Richard S. Edelman, with whom Lois G. Williams, Washington, D.C., was on brief, for petitioner.

William R. Tobey, Federal Labor Relations Authority, with whom Ruth E. Peters, Sol., and Steven H. Svartz, Deputy Sol., Federal Labor Relations Authority,

Washington, D.C., was on brief, for respondent.

Before RUTH BADER GINSBURG and BORK, Circuit Judges, and GESELL*, District Judge.

Opinion for the Court filed by Circuit Judge BORK.

BORK, Circuit Judge:

Petitioner, the National Treasury Employees Union ("NTEU"), seeks review of a decision of the Federal Labor Relations Authority ("FLRA") finding two bargaining proposals regarding the selection of employees to perform "office audits" to be nonnegotiable on the ground that their implementation would interfere with the Internal Revenue Service's ("IRS") right to assign work. We deny the petition to review the FLRA's decision with regard to the first proposal, grant the petition with regard to the second proposal, and remand for further proceedings.

### I.

The Federal Service Labor-Management Relations Act requires federal agencies and unions representing federal employees to bargain over conditions of employment. 5 U.S.C. § 7103(a)(12) (1982). This duty is limited by the Act's exclusion therefrom of certain reserved management rights, including the right "to assign work." *Id.* § 7106(a)(2)(B).[1] Although federal agencies are not required to bargain over the substance of these reserved rights, "an agency must bargain over the procedures by which these management rights are exercised." *Bureau of Alcohol, Tobacco &*

*Firearms v. Federal Labor Relations Auth.,* 464 U.S. 89, 92, 104 S.Ct. 439, 441, 78 L.Ed.2d 195 (1983); *see* 5 U.S.C. § 7106(b)(2) (1982). A proposal involving the procedures to be employed by a federal agency is also non-negotiable, however, "if its implementation would 'directly interfere with the agency's basic right ... [as reserved] under section 7106(a)....'" *Department of Defense v. Federal Labor Relations Auth.,* 659 F.2d 1140, 1159 (D.C. Cir.1981) (quoting *American Fed'n of Gov't Employees,* 2 F.L.R.A. 604, 613 (1980)), *cert. denied,* 455 U.S. 945, 102 S.Ct. 1443, 71 L.Ed.2d 658 (1982).

The proposals at issue arose out of a decision by the IRS to conduct some audits of employee benefits plans in IRS district offices ("office audits") rather than at the taxpayer's place of business ("field audits"). The work performed during the office audits would be identical to that performed during the field audits and would "come[ ] within the position description of the employees at issue." Statement of Agency Position at 6 n. 4, Joint Appendix ("J.A.") at 30. The only difference between the two types of audits is the place where the work is to be performed. The change in practice affected employees who perform audits throughout the state of Colorado.

During collective bargaining negotiations, NTEU, the exclusive bargaining representative of IRS employees, submitted two proposals regarding the selection of employees to perform office audits. Proposal 1 provides that office audit assignments will be made first from among qualified volunteers in accordance with certain

---

* Of the United States District Court for the District of Columbia, sitting by designation pursuant to 28 U.S.C. § 292(a) (1982).

1. 5 U.S.C. § 7106 (1982) provides in relevant part:

    (a) Subject to subsection (b) of this section, nothing in this chapter shall affect the authority of any management official of any agency—

     ....

    (2) in accordance with applicable laws—

    ....

    (B) to assign work, to make determinations with respect to contracting out, and to determine the personnel by which agency operations shall be conducted;

    ....

    (b) Nothing in this section shall preclude any agency and any labor organization from negotiating—

    ....

    (2) procedures which management officials of the agency will observe in exercising any authority under this section; ...

competitive procedures. If volunteers are unavailable, qualified employees will be selected primarily on the basis of inverse seniority.[2] Proposal 2 provides that, "absent just cause," certain union officials will be given first preference to perform the office audits before volunteers are solicited.[3] When the IRS refused to negotiate over these proposals, the NTEU filed a negotiability appeal with the FLRA. *See* 5 U.S.C. § 7117 (1982).

The FLRA found both proposals to be nonnegotiable because they would interfere with the employer's right to assign work and thus concluded that the proposals are not within the IRS' duty to bargain. *National Treasury Employees Union*, 17 F.L.R.A. 379 (1985). With respect to Proposal 1, the FLRA noted that " 'the right to assign work includes discretion to determine when the work which has been assigned will be performed,' " *id.* at 380 (quoting *American Fed'n of Gov't Employees, AFL–CIO*, 8 F.L.R.A. 347, 377 (1982), *rev'd as to other matters sub nom. Department of Justice v. Federal Labor Relations Auth.*, 709 F.2d 724 (D.C.Cir. 1983)), and concluded that the proposal would violate this right because

> by prescribing the selection of employees to perform office audits without taking into consideration those employees' availability to perform such work, Union Proposal 1 would force management into one of two choices where the employees identified by application of the proposed procedures are engaged in ongoing or priority field audits. The Agency would either have to relieve the identified employees

of their continuing assignments or delay the start of the office audits pending completion of the field assignments.

17 F.L.R.A. at 380–81.

The FLRA concluded that Proposal 2 did not interfere with the IRS' ability to determine when work would be performed because it included a "just cause" exception, but found that it was nonnegotiable because it would interfere with the agency's right " 'to assign work to *all* employees, regardless of whether they are Union officials and regardless of whether they consent.' " 17 F.L.R.A. at 381 (quoting *American Fed'n of Gov't Employees, AFL–CIO, Local 2272*, 9 F.L.R.A. 1004 (1982)). This petition for review followed.

## II.

The Act provides that decisions of the FLRA must be made in accordance with section 10(e) of the Administrative Procedure Act, 5 U.S.C. § 706 (1982). 5 U.S.C. § 7123 (1982). Thus, the FLRA's decisions will be upheld if they are not "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." *Id.* When the FLRA is construing its enabling legislation, its determinations are to be accorded "considerable deference," *Bureau of Alcohol, Tobacco & Firearms*, 464 U.S. at 97, 104 S.Ct. at 444, and a negotiability decision will be upheld if the FLRA's construction of the Act is "reasonably defensible." *Department of Defense*, 659 F.2d at 1162 n. 121.

**2.** Proposal 1 provides in full:
> The selection of employees to perform office audits shall be made in accordance with Principles B and C of the National Redeployment Guidelines.

Petition to Review Assertion of Nonnegotiability at 1, J.A. at 5.

Principles B and C of the National Redeployment Guidelines provide:
> B. Placement of affected volunteers into continuing positions by reassignment or voluntary downgrade shall be made in accordance with the competitive procedures of Article 7 of the Master Agreements.
> C. When involuntary reassignments must be made, inverse IRS seniority of employees will

play the primary role in determining which affected employees are placed in continuing positions.

National Redeployment Guidelines at 4, J.A. at 13.

**3.** Proposal 2 provides in full:
> Where the NTEU Chapter President or Steward is assigned to EP/EO field work, he/she shall be given the opportunity to work office/correspondence examinations before volunteers are solicited, absent just cause.

Petition to Review Assertion of Nonnegotiability at 2, J.A. at 6.

## A.

We find that the FLRA's conclusion that Proposal 1 will directly interfere with the IRS' right to assign work is more than reasonably defensible. As this court has previously recognized, "the right to determine what work will be done, and by whom and when it is to be done, is at the very core of successful management of the employer's business." *National Treasury Employees Union v. Federal Labor Relations Auth.*, 691 F.2d 553, 563 (D.C.Cir. 1982). Because Proposal 1 does not include a provision requiring that the employee selected by application of the proposal be available to perform the work, the IRS' right to determine when work will be done is lost when the chosen employee is involved in an ongoing field assignment. As the FLRA concluded, when such an employee is unavailable, the IRS will be forced either to delay an office audit or to discontinue the field audit being performed by the chosen employee.

We see no argument supporting the conclusion that this result would not directly interfere with the right to determine when assigned work will be performed. In fact, the NTEU has essentially conceded this point by its inclusion of a "just cause" provision in Proposal 2, the stated purpose of which is to cover situations where union officials "due to their present work assignments, cannot be called back to the office without causing a severe interruption of the IRS's workload." NTEU Petition to Review Assertion of Nonnegotiability at 2, J.A. at 6. It is inconsistent for the NTEU to argue that the unavailability of some employees will interfere with the IRS' ability to determine when work will be done, while the unavailability of other employees will not, when the employees involved in both situations are engaged in the same type of work. As such, the NTEU has not attempted to argue that its positions are consistent. Instead it has raised other contentions which we think to be without merit.

The NTEU's primary argument on appeal is that Proposal 1 is merely a procedure for selection among qualified employees and, based upon NLRA precedent, is therefore negotiable. *See* Brief for Petitioner at 11–18 (citing *American Fed'n of Gov't Employees*, 5 F.L.R.A. 83 (1981); *Laborers Int'l Union*, 9 F.L.R.A. 703 (1982); *American Fed'n of Gov't Employees*, 15 F.L.R.A. 545 (1984)). We agree with the NTEU that had the FLRA concluded that Proposal 1 was nonnegotiable because it interfered with the IRS' right to determine *who* will perform the work, this conclusion would have been inconsistent with the cited precedent. However, the FLRA specifically rejected the IRS' contention to this effect as "unpersuasive." 17 F.L.R.A. at 380. The NTEU's argument and the cases it cites are, therefore, irrelevant to the issue of whether Proposal 1 will directly interfere with the IRS' right to determine *when* assigned work will be done.

We think the NTEU's corollary argument—that the FLRA's decision in this case is inconsistent with the cited precedent because those decisions could have discussed the employer's right to determine when work will be done but did not—has even less merit. First, this court properly does not require an agency to raise and reject every conceivable basis for its decision so that it will not be inconsistent with some future decision that may involve similar challenges. Second, it was not necessary to address the issue in two of the cited decisions because the proposals under review included provisions which would protect the employer's right to determine when assigned work would be performed. *See American Fed'n of Gov't Employees*, 5 F.L.R.A. at 83 ("TDY will be offered to qualified *and available* employees with requisite skills on the basis of seniority") (emphasis added); *Laborers Int'l Union*, 9 F.L.R.A. at 703 ("The Employer agrees that, *to the extent consistent with work requirements*, every possible effort will be made to detail employee[s] to higher level duties in the following manner[ ]") (emphasis added). Finally, because the employer's right to determine when assigned work will be done was not addressed in the third cited decision, and presumably was not

raised by the agency, we cannot determine whether the issue should have been discussed. We certainly are not required to reverse an agency decision because the basis for that decision was not raised in an earlier case in which it may not have been necessary to raise it.

■ The NTEU argues next that the FLRA's decision must be reversed because the IRS did not submit evidence to support its claim that Proposal 1 would interfere with its right to determine when work would be done. The NTEU claims that the IRS could have submitted evidence regarding "the number of employees involved in office and field audits, the duration of such audits, how many employees would be affected by the decision to perform more office audits and the number of priority audits." Brief for Petitioner at 18. Putting aside the fact that on its face the proposal supports the FLRA's decision, we conclude that the NTEU did not raise this contention below and, therefore, that we do not have jurisdiction to entertain it here. *EEOC v. Federal Labor Relations Auth.*, — U.S. —, 106 S.Ct. 1678, 1680, 90 L.Ed.2d 19 (1986); *American Fed'n of Gov't Employees v. Federal Labor Relations Auth.*, 803 F.2d 737, 742 (D.C.Cir. 1986); *see* 5 U.S.C. § 7123(c) (1982) ("No objection that has not been urged before the Authority ... shall be considered by the court, unless the failure or neglect to urge the objection is excused because of extraordinary circumstances."). We also find the NTEU's argument to the contrary to be rather specious. The NTEU's "theory" that it raised this contention proceeds as follows: (1) the IRS argued that Proposal 1 " 'would not take into account the availability of the employee who may otherwise be involved in a long-term and complex field audit and the varying travel costs of bringing employees in from different field locations.' " Reply Brief for Petitioner at 9 n. 6, *quoting* Statement of Agency Position at 9, J.A. at 33; (2) the NTEU argued below that the IRS had not substantiated its claims regarding the costs of the proposal and the effect of the proposal in emergency situations. *See* NTEU Response to Agency Statement at 4–5, J.A. at 60–61; (3) therefore, because the IRS' argument that the proposal would interfere with its right to determine when work would be done "was always linked to travel costs" and the NTEU addressed the lack of evidence regarding travel costs, it has thereby also addressed the timing argument. Reply Brief for Petitioner at 9. The proposition does not survive its statement.

In any event, the record is clear that the IRS' objections were not "linked." In the first part of its Statement of Agency Position, the IRS argued that Proposal 1 would place a financial and administrative burden on the agency. The NTEU challenged this argument as unsupported. In the second part of its Statement, the IRS argued independently that Proposal 1 would "clearly prohibit management from considering other relevant and significant factors in assigning work including the availability of employees based on current workload priorities and assignments." Statement of Agency Position at 11, J.A. at 35; *see id.* at 13, J.A. at 37 (proposal "would prevent management from requiring that the normal duties assigned to employees be performed when performance of those duties would conflict with such employees performing office audits"). The NTEU simply chose not to argue before the FLRA that this position was unsupported by substantial evidence and it thus lost its right to do so here.[4] We deny the petition to review the decision of the FLRA that Proposal 1 is not within the IRS' duty to bargain.[5]

---

4. Even on this petition for review, the NTEU has not argued that the affected employees are never assigned to lengthy field audits at great distances from the district offices. Nor has the NTEU argued that there will be no circumstances when the IRS will be forced to delay an office audit pending the completion of a field audit or to curtail a field audit so that the chosen employee can begin an office audit.

5. The NTEU also argues that the IRS' arguments go to the merits of the proposal and not to its negotiability and therefore that the dispute should have been submitted for binding arbitration to the Federal Services Impasses Panel, *see*

### B.

We cannot, however, see a rational basis for the FLRA's conclusion that Proposal 2 (which provides that "absent just cause," certain union officials shall have a first preference for office audits) deprives the IRS of the right to assign work to all employees. We find it indistinguishable from other proposals regarding procedures by which qualified employees are to be selected for certain work.

The FLRA argues that Proposal 2 creates an "exception to management's right to assign" work and, therefore, pursuant to its decision in *American Fed'n of Gov't Employees, AFL-CIO, Local 2272* ("*U.S. Marshals Service*"), 9 F.L.R.A. 1004 (1982), is nonnegotiable. In that case, the union submitted a proposal which provided that "[t]here should not be any union official going on details, special assignments, PC [Prison Central] trips, or any other out of the District activities that would take union officials out of touch with management." *Id.* at 1014. The FLRA held that this proposal interfered with the employer's right to assign work to all employees because it created an "exception" to the employer's right to assign certain work. *Id.*

The *U.S. Marshals Service* case is clearly distinguishable from the one before us. In that case, management could never assign certain work to union officials. In this case, the IRS can assign any work to the named union officials that it had previously assigned to them. The proposal merely provides that these union officials will have first preference for office audits. If the union officials do not prefer office audits, or if none are available, or if there is just cause for denying their first preference, the union officials may be assigned to

field audits. The proposal in no way excepts these officials from a certain type of work.

All procedures for selecting qualified employees for certain work "excepts" them from doing other work at the same time. Proposal 2 has the same effect as one that requires that certain assignments "be offered to qualified and available employees with requisite skills on the basis of seniority," *American Fed'n of Gov't Employees,* 5 F.L.R.A. 83 (1981), or one that requires management to assign work to an employee with the "greatest Federal employment service" when two or more employees are "equally well qualified and capable of performing the detail work." *Laborers Int'l Union of North Am., AFL-CIO, Local 1276,* 9 F.L.R.A. 703, 704 (1982). Because these proposals have been found by the FLRA to be negotiable, a finding that Proposal 2 is nonnegotiable cannot be upheld on this ground absent some explanation for the inconsistency. *See Department of the Treasury v. Federal Labor Relations Auth.,* 707 F.2d 574, 581 n. 24 (D.C.Cir. 1983). The FLRA has not proffered such an explanation. Nor has it provided any other evidence that these union officials will be excepted from performing any type of work. Therefore, we grant the petition for review of the FLRA's decision that Proposal 2 is nonnegotiable because it directly interferes with the IRS' right to assign work.[6] Because the FLRA considered only the IRS' claim that the proposal violated section 7106(a)(2)(B), we remand for consideration of the IRS' claims that Proposal 2 was nonnegotiable because it directly interfered with its right to direct employees, 5 U.S.C. § 7106(a)(2)(A) (1982), and to determine the number and type of employees assigned to an organizational subdivision

5 U.S.C. § 7119 (1982). Brief for Petitioner at 20. This argument was raised and rejected by this court in *American Fed'n of Gov't Employees, AFL-CIO, Local 1968 v. Federal Labor Relations Auth.,* 691 F.2d 565, 574 n. 88 (D.C.Cir.1982). *See also* 5 U.S.C. § 7105(a)(2)(E) (1982) (FLRA "resolves issues relating to the duty to bargain in good faith").

6. We note that the FLRA referred to the statutory provision prohibiting an agency from encouraging or discouraging membership in a labor organization by discrimination in conditions of employment, 5 U.S.C. § 7116(a)(2) (1982), *see* 17 F.L.R.A. at 831 n. 7, but did not base its decision on this provision. Therefore, we express no opinion as to the effect of this provision on the negotiability of Proposal 2.

or work project, *id.* § 7106(b)(1). *See* Statement of Agency Position at 2, J.A. at 26.

*It is so ordered.*