**UNITED STATES IMMIGRATION AND NATURALIZATION SERVICE, Petitioner Cross–Respondent,**

**v.**

**FEDERAL LABOR RELATIONS AUTHORITY, Respondent Cross-Petitioner.**

No. 87–4149.

United States Court of Appeals, Fifth Circuit.

Dec. 28, 1987.

Robert K. Rasmussen, Douglas N. Letter, Attys., Appellate Staff, Civ. Div., U.S. Dept. of Justice, Washington, D.C., for U.S.I.N.S.

Elsa D. Newman, Washington, D.C., Susam E. Jelen, FLRA, Region VI, Dallas, Tex., Ruth E. Peters, Sol., Arthur A. Horowitz, Assoc. Sol., William E. Persina, Deputy Sol., Washington, D.C., for FLRA.

Judith D. Galat, Atty., AFGE, Mark D. Roth, Washington, D.C., for intervenor AFGE.

Petition for Review and Cross-Application for Enforcement of an Order of the Federal Labor Relations Authority.

Before RANDALL and DAVIS, Circuit Judges, and PARKER *, District Judge.

ROBERT M. PARKER, District Judge.

The Immigration and Naturalization Service (INS) promulgated a new work schedule whereby its inspectors at the El Paso District Office would be scheduled for rotation between work stations every 1 hour. The reason given for such a change was that the new schedule would improve the efficiency of the operations by better utilization of available manpower. **INS employees continued to work at each station for the same total number of hours each day**; the only change concerned the amount of time spent at each station prior to rotation. Although **all OSHA safety standards were satisfied**, the union objected to the new schedule on the grounds that it would entail a greater exposure to carbon monoxide.[1] The union's unfair labor practice charge was referred to an administrative law judge (ALJ), who found that the INS was not required to bargain over the change in the inspectors' work schedules. The ALJ found that under the Authority's previous decisions, management's right to assign work included the right to allocate specific amounts of time within which specified tasks will be accomplished. The Federal Labor Relations Authority (hereinafter the "Authority") reversed the holdings of the ALJ. Finding that the new schedule did not amount to an "assignment of work", the Authority held that the INS had an obligation to engage in the collective bargaining process, and the failure to do so constituted an unfair labor practice. However, the Authority did *not* rely on an adverse impact analysis, 5 U.S.C. § 7106(b)(3) (1982), to find an obligation to bargain over health related matters. The Immigration & Naturalization Service appealed to this court. We reverse.

The threshold issue in this case concerns the appropriate standard of review to be accorded to decisions of the "Authority".

The standard of review applicable to the present case is "whether the Authority's decision was "arbitrary, capricious, an abuse of discretion, **or otherwise not in accordance with the law**." 5 U.S.C. § 7123(c) (1982) (emphasis added) (adopting the Administrative Procedure Act's standard of review found at 5 U.S.C. § 706); *Bureau of Alcohol, Tobacco, & Firearms v. F.L.R.A.*, 464 U.S. 89, 97 n. 7, 104 S.Ct. 439, 444 n. 7, 78 L.Ed.2d 195 (1983); *National Treasury Employees Union v. F.L.R.A.*, 810 F.2d 1224, 1225 (D.C.Cir.1987); *American Federation of Government Employees v. F.L.R.A.*, 794 F.2d 1013, 1015 (5th Cir.1986); *National Treasury Employees Union v. F.L.R.A.*, 691 F.2d 553, 564 (D.C.Cir.1982). As the Supreme Court has stated, "... the 'deference owed to an expert tribunal cannot be allowed to slip into a judicial inertia which results in the unauthorized assumption by an agency of major policy decisions properly made by Congress.'" *Bureau of Alcohol, Tobacco, & Firearms*, 464 U.S. at 97, 104 S.Ct. at 444, *quoting, American Ship Building Co. v. N.L.R.B.*, 380 U.S. 300, 318, 85 S.Ct. 955, 967, 13 L.Ed.2d 855 (1965). Although a reviewing court should uphold reasonable and defensible constructions of an agency's enabling act, "**they must not 'rubber-stamp ... administrative decisions that they deem inconsistent with a statutory mandate or that frustrate the congressional policy underlying a statute.**" *Bureau of Alcohol, Tobacco, & Firearms*, 464 U.S. at 97, 104 S.Ct. at 444, *quoting N.L.R.B. v. Brown*, 380 U.S. 278, 291–92, 85 S.Ct. 980, 988–89, 13 L.Ed.2d 839 (1965) (emphasis added).

The Federation of Government Employees' (hereinafter the "union") principle contention throughout this litigation has been that the modification of the shift periods did not constitute an assignment of work by management, and therefore the I.N.S. had a mandatory obligation to engage in the collective bargaining process. Finding

---

* District Judge of the Eastern District of Texas, sitting by designation.

1. Specifically, the union objected to the accumulation and exposure to automobile exhaust fumes in and around the covered border checkpoints.

the modification of the shift periods to be a change in a condition of employment rather than an assignment of work, the Authority agreed with the union's position. 25 F.L.R.A. at 37. We have come to the conclusion that the Authority's decision is "not in accordance with the law", *National Treasury Employees Union,* 810 F.2d at 1225, and accordingly must be reversed.

■ The applicable statutory scheme provides that management need not engage in the collective bargaining process when management's action consists of an "assignment of work".[2] As this court has observed before, management has the absolute and unilateral authority to assign and direct an employee's work. *United States Department of Justice v. F.L.R.A.,* 727 F.2d 481, 487 (5th Cir.1984). The entire statutory scheme clearly demonstrates a strong congressional intent to preserve an agency's ability to operate in an effective and efficient manner by maintaining an unabridged managerial right to assign work. After citing a rather extensive legislative history accompanying the statute, the United States Court of Appeals for the District of Columbia explained:

> Without a doubt, **the right to determine what work will be done, and by whom, and when it is to be done, is at the very core of successful management** of the employer's business, whether a private-sector enterprise or the public service operations of a federal agency. It follows necessarily that this right is **essential to management's ability to achieve optimum productivity, and accordingly to the agency's ability to function in an effective manner.** The Authority's construction of Section 7106(a) as a reservation of this invaluable right to management, thereby **insulating it from dilution at the bargaining table, is thus fully obedient to the congressional command that the Act be interpreted in a manner consistent with the exigencies of efficient government.** *National Treasury Employees Union v. F.L.R.A.,* 691 F.2d 553, 563 (D.C.Cir. 1982) (emphasis added).

The United States Court of Appeals for the District of Columbia recently reaffirmed this interpretation of the statute. *National Treasury Employees Union,* 810 F.2d at 1227. The very same principle has been adopted as the law in the fifth circuit as well. *United States Department of Justice,* 727 F.2d at 487. In short, management retains complete authority to decide WHEN a particular task is to be performed by an agency employee. There is neither an obligation nor a duty to negotiate with the union as to WHEN an employee is assigned to do a particular task.

■ In the case at bar, the I.N.S. amended the work schedule to provide for 1 hour rotations between job stations. Over the entire work day, each employee spends the **same amount of time performing tasks at each station,** the only change as a result of the amended work schedule concerns WHEN tasks are performed. The facts of

---

**2.** 5 U.S.C. § 7106 MANAGEMENT RIGHTS

(a) Subject to subsection (b) of this section, nothing in this chapter shall affect the authority of any management official of any agency—

.　.　.　.　.

(2) in accordance with applicable laws—
(A) to hire, **assign,** direct, layoff, and retain employees in the agency, or to suspend, remove, reduce in grade or pay, or take other disciplinary action against such employees;
(B) **to assign work,** to make determination with respect to contracting out, and **to determine the personnel by which agency operations shall be conducted;**
(C) with respect to filling positions, to make selections for appointments from—
(i) among properly ranked and certified candidates for promotion; or
(ii) any other appropriate source; and

(D) to take whatever actions may be necessary to carry out the agency mission during emergencies.

(b) Nothing in this section shall preclude any agency and any labor organization from negotiating—
(1) **at the election of the agency,** on the numbers, types, and grades of employees or positions assigned to any organizational subdivision, work project, or tour of duty, or on the technology, methods, and means of performing work;
(2) procedures which management officials of the agency will observe in exercising any authority under this section; or
(3) appropriate arrangements for employees adversely affected by the exercise of any authority under this section by such management officials. 5 U.S.C. § 7106 (1982) (emphasis added).

this case fall more closely under an "assignment of work" classification than a change in a "condition of employment". However, they are more correctly categorized as simply work scheduling under an existing work assignment that does not have the effect of changing conditions of employment. In the national interest of maintaining efficiency and effectiveness in the administrative agencies, Congress expressed an intention to allow management to retain broad discretion in assigning and scheduling the work of agency employees. Requiring the I.N.S. to shift the employees between stations every 30 minutes can not be reconciled with the clear congressional intent to promote effective and efficient government. The total time of exposure to any remaining carbon monoxide fumes has not changed as a result of the amended work schedule. Furthermore, it bears repeating that the levels of carbon monoxide to which the union objects are within guidelines established by the Occupational Safety and Health Administration. For these reasons, this court concludes that the Authority's order in this case is not in conformity with the intent of Congress, the Authority's prior decisions, or the case law in this circuit. Since the Authority's order under consideration is not "in accordance with the law," the order must be REVERSED.