DEPARTMENT OF the NAVY, NAVAL
UNDERWATER SYSTEMS
CENTER, Petitioner,

v.

FEDERAL LABOR RELATIONS
AUTHORITY, Respondent.

No. 87–2024.

United States Court of Appeals,
First Circuit.

Heard June 9, 1988.

Decided Aug. 16, 1988.

Katherine S. Gruenheck, Appellate Staff,
Civil Div., Dept. of Justice, with whom
James M. Spears, Acting Asst. Atty. Gen.,
and William Kanter, Appellate Staff, Civil
Div., Dept. of Justice, Washington, D.C.,
were on brief, for petitioner.

Arthur A. Horowitz, Associate Sol., with
whom Ruth E. Peters, Sol., William E. Per-
sina, Deputy Sol., and Denise M. Morelli,
Washington, D.C., were on brief, for re-
spondent.

Before CAMPBELL, Chief Judge,
Torruella and Selya, Circuit Judges.

LEVIN H. CAMPBELL, Chief Judge.

The Department of the Navy, Naval Un-
derwater Systems Center ("Navy"), peti-
tions this court to review a decision of the
Federal Labor Relations Authority
("FLRA" or "Authority"). The FLRA or-
dered the Navy to bargain over a proposal

the National Association of Government Employees, Local RI–144 ("Union"), made during the course of collective bargaining with the Navy. *National Association of Government Employees, Local RI–144, and Department of the Navy, Naval Underwater Systems Center*, 29 FLRA No. 47 (1987). The FLRA cross-petitions for enforcement of its order. We conclude that the order is unenforceable.

## I.

This case arises under the Federal Service Labor–Management Relations Act, 5 U.S.C. §§ 7101 *et seq.* (1982), which provides a statutory framework for regulating federal sector labor relations. Central to this framework is section 7103(a)(12), which obligates federal employers to bargain in good faith with respect to the "conditions of employment." Likewise important to the statutory scheme, however, is section 7106's limitation on this obligation. This section of the Act,[1] entitled "Management Rights," reserves certain powers for the agencies;[2] for example, under the part of section 7106(a) relevant here, "nothing in this chapter shall affect the authority of any management official of any agency ... to hire, assign, direct, layoff, and retain employees in the agency." Therefore, a collective bargaining proposal for negotiation over the exercise of a management right is not within the agency's duty to bargain. *See National Treasury Employees Union v. FLRA*, 691 F.2d 553, 554 (D.C.Cir.1982).

The Act is administered by the Federal Labor Relations Authority, an independent agency with a role in the federal employment sector analogous to the role of the National Labor Relations Board in the private sector. *See Bureau of Alcohol, Tobacco & Firearms v. FLRA*, 464 U.S. 89, 92–93, 104 S.Ct. 439, 441–442, 78 L.Ed.2d 195 (1983). Among its duties, the FLRA "resolves issues relating to the duty to bargain in good faith." 5 U.S.C. § 7105(a)(2)(E).

The Navy argues in its petition for review that the FLRA erred in deciding that the Union's proposal here in issue was negotiable. Petitioner contends the proposal calls for negotiation concerning authority of Navy officials to "layoff" agency employees, a non-negotiable management right under section 7106(a)(2)(A). Under the judicial review provision of the Act, *id.* at § 7123(c), which cross-references section 706 of the Administrative Procedure Act, we are empowered to set aside the Authority's decision only if it is "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. § 706(2)(A).

The disputed proposal put forth by the Union contains a pair of terms that de-

---

1. In full, section 7106 provides,
   **§ 7106. Management rights**
   (a) Subject to subsection (b) of this section, nothing in this chapter shall affect the authority of any management official of any agency—
   (1) to determine the mission, budget, organization, number of employees, and internal security practices of the agency; and
   (2) in accordance with applicable laws—
   (A) to hire, assign, direct, layoff, and retain employees in the agency, or to suspend, remove, reduce in grade or pay, or take other disciplinary action against such employees;
   (B) to assign work, to make determinations with respect to contracting out, and to determine the personnel by which agency operations shall be conducted;
   (C) with respect to filling positions, to make selections for appointments from—
   (i) among properly ranked and certified candidates for promotion; or
   (ii) any other appropriate source; and

   (D) to take whatever actions may be necessary to carry out the agency mission during emergencies.
   (b) Nothing in this section shall preclude any agency and any labor organization from negotiating—
   (1) at the election of the agency, on the numbers, types, and grades of employees or positions assigned to any organizational subdivision, work project, or tour of duty, or on the technology, methods, and means of performing work;
   (2) procedures which management officials of the agency will observe in exercising any authority under this section; or
   (3) appropriate arrangements for employees adversely affected by the exercise of any authority under this section by such management officials.

2. The Navy is an "agency" for the purposes of this statute. 5 U.S.C. § 7103(a)(3) (1982).

scribe the status of non-working federal employees. Under the relevant terminology, a "furloughed" employee has no duties and is not paid, 5 U.S.C. § 7511(a)(5); an employee given "administrative leave," on the other hand, has no work but *is* paid, *see* Federal Personnel Manual Supplement 990–2, Chapter 630, subchapter S11–5. The Union's proposal is as follows:

> Furloughs of employees will be the last resort when administrative leave cannot be given due to budgetary constraints.[3]

Although the meaning of the proposal is not altogether clear on its face, the Union, the Navy, and the Authority all seem to agree on the following meaning: employees can only be furloughed (as opposed to being placed on administrative leave) when budgetary constraints so dictate. The FLRA found, moreover, and the Union insists, that the disputed proposal was meant to apply only to short-term curtailments of Navy operations during the Christmas/New Year holiday season, although the proposal itself mentions no such limitation. Thus, the immediate effect of the adoption of the Union's proposal would apparently be to require the Navy to place superfluous employees on administrative (*i.e.*, paid) leave when and if it temporarily shuts down operations, especially over the Christmas/New Year holiday.

Upon receiving this proposal from the Union, the Navy took the position that it was not a proper subject of bargaining as it allegedly undercut the authority conferred upon management under section 7106(a)(2)(A). The Union thereupon exercised its statutory right of appeal to the FLRA. *See* 5 U.S.C. § 7117(c) (negotiability appeals).

The FLRA rejected the Navy's argument that the Union's proposal would compromise its authority to lay off employees. Its analysis contained two steps. First, the Authority asserted that "an agency's decision to shut down or to curtail operations is an aspect of its decision to lay off under section 7106(a)(2)(A)." The Authority observed that an agency may also lay off employees for budgetary reasons (*e.g.*, lack of appropriated funds, insufficient appropriation to maintain workforce); however, nothing in the Union proposal precluded the Navy from laying off employees for budgetary reasons. The Authority concludes this first part of its analysis as follows: "Thus, we find this sentence [the proposal] would not in any manner prevent the Agency from curtailing or shutting down its operations."

We reproduce the second step of the Authority's reasoning in toto:

> In addition, we find that requiring employees to be placed on administrative leave instead of being placed on furlough for the period of the temporary shut down does not interfere with the Agency's right under section 7106(a)(2)(A) to lay off. Specifically, while the term "to lay off" is not defined in the Statute it generally involves placing employees in a temporary status without duties for nondisciplinary reasons. *See, for example, Roberts['] Dictionary of Industrial Relations* 377–78 (3d Ed.1986). There is nothing inherent in the term "to lay off" and the Agency points to no restrictions in law or regulation, which indicates that employees must be in a non-paid status during a layoff. In fact, as noted in section B.1 above, an agency may place employees on administrative leave, that is, in a status without duties but with pay and without charge to leave during short periods of curtailed operations. In other words, an agency is authorized to lay off employees with pay for brief periods of time.
>
> Consequently, we conclude that a requirement to place employees on administrative leave for the brief period of curtailed operations contemplated in this case is consistent with the Agency's right to layoff employees. Therefore, this sentence is negotiable.

In sum, the Authority reasoned that because the Navy could always lay off em-

---

3. This sentence actually appeared in two separate Union proposals. Since this sentence is the only part of either proposal in dispute here, we will refer to this sentence as the disputed proposal.

ployees for budgetary reasons, and could "lay off employees with pay" during shutdowns, its general right to lay off employees was unaffected by the proposal.

## II.

Although an agency's interpretation of the statute it administers is normally owed considerable deference, a reviewing court should only uphold an interpretation that is "reasonable and defensible." *Bureau of Alcohol, Tobacco & Firearms v. FLRA*, 464 U.S. 89, 97, 104 S.Ct. 439, 444, 78 L.Ed.2d 195 (1983). *See Chevron U.S.A., Inc. v. Natural Resources Defense Council, Inc.*, 467 U.S. 837, 843, 104 S.Ct. 2778, 2782, 81 L.Ed.2d 694 (1984) ("permissible" agency interpretations must be upheld). The FLRA's interpretation seems neither. We think the Authority's decision reflects a fundamental misreading of the statute's command that "nothing in this chapter shall affect the authority of any agency ... to ... layoff ... employees in the agency." 5 U.S.C. § 7106(a)(2)(A). First, we have difficulty finding any basis for the Authority's conclusion that the term "layoff" can ordinarily be read to describe the employment status of workers on paid leave. Second, even assuming the Authority's interpretation of "layoff" is somehow supportable, we believe the Authority erred in concluding that the proposal did not "affect" the Navy's right to lay off employees.

■ A. The Authority cites neither precedent nor legislative history for the proposition that employees on paid administrative leave can be considered "laid off." Instead, it enlists the definition of "layoff" in *Roberts' Dictionary of Industrial Relations* (3d ed. 1986), which is supposed to be compelling because it does not explicitly say "laid off workers are not paid." [4] But we find little in the *Roberts'* definition that supports the Authority's view. To the contrary, the definition seems to us to imply that laid off workers are normally *not* paid, since "layoff" is defined as a "temporary or indefinite separation from employment," and the laid off employee is described as being "generally reemployed." If a laid off employee is "separated" from employment, and is "re-employed" at the end of the layoff, one would think it unlikely that he was paid while laid off, since a person drawing regular pay (as if still working) does not meet the ordinary concept of an *unemployed* worker.

Not only does the Authority fail to offer any convincing support for its interpretation, but we find in other congressional enactments support for the view that Congress would have understood the term layoff, under most conditions, to describe a no duty/no pay employment status. For example, in the eligibility criteria for employee benefits under the Redwood Employee Protection Program, Title II, Redwood National Park Expansion Act of 1978 ("Redwood Act"), Pub.L. No. 95–250, §§ 201–213, 92 Stat. 163, Congress provided the following distinction between a "total layoff" and a "partial layoff":

> "total layoff" means a calendar week during which affected employers have made no work available to a covered employee and made no payment to said covered employee for time not worked, and "partial layoff" means a calendar week for which all pay received by a covered employee from affected employers is at least 10 per centum less than the layoff or vacation replacement benefit that would have been payable for that week had said covered employees suffered a total layoff.

*Id.* at § 201(12). Under these definitions, the feature of a "partial layoff" that makes it partial is that the employee in fact receives some pay from an employer that week, and is thereby not "totally" laid off. We infer from this distinction that Con-

---

**4.** The complete definition is as follows:
> **Layoff** A term generally applied to a temporary or indefinite separation from employment.
> Employees in layoff status usually retain certain seniority rights and other protection under contract of company practice. The

term occasionally is confused with "discharge." On occasion the Layoff is used as a disciplinary penalty, in which case it is for a specific period of time and it is a penalty for the specific abuse of company rule or regulation. The employee is generally re-employed.

gress believed the term layoff to describe a no duty/no pay employment status. We also note that in diverse contexts Congress has enacted legislation relating to the "protection" of laid off employees.[5] Although it is conceivable that Congress would be this solicitous of the interests of workers in a paid leave status, we think it more likely Congress's concerns were directed toward workers out of work *and* out of wage, and therefore in need of such statutory protection.

We thus think it likely, and in accord with common parlance, that when Congress used the term layoff it intended to describe the status of a worker who is presently not working and not being paid his normal working wage. The right to lay off employees under section 7106(a)(2)(A) would mean, therefore, at least in its most usual sense, the right to place employees in a no-pay status. Under this definition of layoff it is clear that the Union proposal "affected" the Navy's right to lay off its employees. Requiring the Navy to place employees on administrative leave during shutdowns would deny—or, at the very least, would certainly restrict and limit—the Navy's authority, in the usual sense, to lay off these employees.

■   B. Second, even were we to accept the Authority's expanded reading of the term "layoff," we would still find the Union proposal non-negotiable. This is because the Authority paid insufficient heed to section 7106(a)(2)(A)'s explicit command that "nothing in this chapter shall *affect* the authority of any management official of any agency ... to ... layoff ... employees." (Emphasis added.) The Authority concedes that the Union's proposal, if adopted, would effectively forbid the Navy from carrying out that kind of layoff that would leave laid off employees *without* pay

during shutdowns.[6] The Authority views this limitation on the Navy's layoff power as de minimis because the Navy can still place employees on administrative leave at such times, that is, it can lay them off *with* pay. We disagree. Preventing Navy management from laying off employees without pay most certainly "affects" the general authority to lay off employees: a particular management layoff option is thereby foreclosed. Nor is the intrusion trivial. The Union's proposal would forbid the Navy from exercising what is surely the most ordinary type of layoff—the layoff without pay—even if it does not foreclose other management decisions that in some circumstances may arguably fall under the layoff rubric. Our conclusion here seems especially warranted in view of the statute's direction that "[t]he provisions of this chapter be interpreted in a manner consistent with the effective and efficient Government." 5 U.S.C. § 7101(b). Layoffs without pay could, in some circumstances, be more efficient than layoffs with pay. It can hardly be said that a proposal preventing the Navy from exercising a usual, sometimes more efficient, layoff option does not "affect" its layoff power.

The Authority's reasoning to the contrary is unpersuasive. Language in its opinion suggests the Authority would hold negotiable any proposal it felt did not "interfere with" or "negate" a management right. The word "affect," however, suggests a less stringent test. *Compare Webster's Third New International Dictionary* (1971) 35 (defining "affect" as "to act upon") *with id.* at 1178 (defining "interfere" as "to come into collision: to be in opposition: to run at cross-purposes); *id.* at 1513 (defining "negate" as "to cause to be ineffective or invalid"). Congress's choice of the verb "affect" in section 7106(a)(2)(A) suggests that it intended

---

5. *See* 15 U.S.C. § 2623 (1982) (Toxic Substances Control Act); 29 U.S.C. § 1652 (1982) (Job Training Partnership Act); 33 U.S.C. § 1367 (1982) (Navigation and Navigable Waters); 42 U.S.C. § 6971 (1982) (Solid Waste Disposal Act); 42 U.S.C. § 7621 (1982) (Clean Air Act); 42 U.S.C. § 8453 (1982) (Powerplant and Industrial Fuel Use Act); 45 U.S.C. § 565 (1982) (Rail Passenger Service Act).

6. The Authority's conclusion that, even under the disputed proposal, "an agency is authorized to lay off employees with pay" during shutdowns, and its layoff rights are therefore not compromised, implicitly acknowledges that the Navy would not be authorized thereunder to lay off employees *without* pay in these circumstances.

agency management to have plenary authority over the rights enumerated thereunder, subject to certain exceptions not relevant here.[7] *See, e.g., United States Immigration and Naturalization Service v. FLRA*, 834 F.2d 515, 517 (5th Cir.1987) (describing management's right under section 7106(a)(2)(A) to assign work as "absolute and unilateral").

*The petition for review is granted, and the petition for enforcement is denied.*

7. *See* section 7106(b)(1) and (2). *Compare, e.g., Department of Defense v. FLRA*, 659 F.2d 1140, 1159 (D.C.Cir.1981) ("a proposal for employee selection procedures would be held nonnegotiable if its implementation would 'directly interfere with the agency's basic right to assign employees (as reserved) under section 7106(a)(2)(A)'") (citation omitted).

The Authority did not suggest in its opinion that the proposal fell under subsection (b) of section 7106 concerning the employees' right to bargain over certain management implementing procedures, nor does the Union so argue on appeal.