**DEPARTMENT OF the TREASURY, Petitioner,**

**v.**

**FEDERAL LABOR RELATIONS AUTHORITY, Respondent,**

**National Treasury Employees Union, Intervenor.**

**No. 87–1084.**

United States Court of Appeals, District of Columbia Circuit.

Argued Dec. 4, 1987.

Decided Jan. 29, 1988.

Thomas M. Bondy, Dept. of Justice, with whom Richard K. Willard, Asst. Atty. Gen., and William Kanter, Dept. of Justice, Washington, D.C., were on the brief, for petitioner.

William E. Persina, Deputy Sol., Federal Labor Relations Authority, with whom Ruth E. Peters, Sol., and Robert J. Englehart, Federal Labor Relations Authority, Washington, D.C., were on the brief, for respondent.

Timothy C. Welsh, with whom Lois G. Williams and Gregory O'Duden, Washington, D.C., were on the brief, for intervenor.

Before WALD, Chief Judge, ROBINSON and EDWARDS, Circuit Judges.

Opinion for the Court filed by Circuit Judge HARRY T. EDWARDS.

HARRY T. EDWARDS, Circuit Judge:

The Bureau of Engraving and Printing and the National Treasury Employees Union ("NTEU") reached a tentative collective bargaining agreement in 1983. One provision of that agreement would have required management to consider for promotion members of the bargaining unit represented by NTEU before assessing the qualifications of other applicants or potential applicants for a vacant position. The provision would also have required management to wait ten days after receiving a list of qualified bargaining-unit employees before reviewing the credentials of other candidates for the position. The Department of the Treasury ("Treasury") refused to approve the provision when it reviewed the tentative contract, concluding that it violated the merit system principles and prohibitions set forth in 5 U.S.C.

§§ 2301, 2302 (1982), and thus that it lay outside the agency's duty to bargain because it was inconsistent with federal law. *See* 5 U.S.C. § 7117(a)(1) (1982). NTEU appealed Treasury's allegation that the provision was not negotiable to the Federal Labor Relations Authority ("FLRA").

The FLRA ruled, in part, that the provision did not offend merit system requirements. *NTEU and Department of the Treasury,* 24 F.L.R.A. 494, 496–97 (1986).[1] Accordingly, it found NTEU's proposal within the scope of Treasury's duty to bargain and ordered Treasury to rescind its disapproval. We agree with the FLRA's determination. NTEU's proposed provision does not contravene the merit system principles and prohibitions of 5 U.S.C. §§ 2301 and 2302 or regulations issued thereunder, because it merely delimits the pool of candidates for a vacant position that management must consider initially. It does not restrict consideration to that group, nor does it compel management to employ criteria that are not job-related in choosing from among the initial group of candidates or an expanded set of applicants. We therefore deny Treasury's petition for review and enforce the FLRA's order.

## I. BACKGROUND

Following negotiations in early 1983, NTEU and the Bureau of Engraving and Printing reached a tentative collective bargaining agreement that included the following provision:

Eligible candidates from within the NTEU, Chapter 201 bargaining unit will be considered for promotion pursuant to the terms of this Article and submitted to the selecting official for appointment. In the event a bargaining unit candidate is not selected for the position, non-bargaining unit candidates may not be submitted to the selecting official for consideration any sooner than ten calendar days following submission of the Best Qualified list of bargaining unit candidates. This procedure does not apply when filling GS–1 positions.

Pursuant to 5 U.S.C. § 7114(c), the tentative agreement was submitted to Treasury for approval. On May 11, 1983, Treasury approved the agreement with the exception of the foregoing provision, alleging that it violated 5 U.S.C. §§ 2301(b)(1)[2] and 2302(b)(6).[3] Memorandum from D.S. Burckman to Robert Ellenberger (May 11, 1983), *reprinted in* Appendix ("App.") 4. Because an agency's duty to bargain in good faith does not extend to proposals insofar as they are "inconsistent with any Federal law or any Government-wide rule or regulation," 5 U.S.C. § 7117(a)(1), Treasury deemed NTEU's proposed provision nonnegotiable. NTEU appealed the determination to the FLRA.

The FLRA found the provision within the scope of the agency's duty to bargain. First, the FLRA ruled that the provision did not conflict with those portions of the Federal Personnel Manual ("FPM") issued by the Office of Personnel Management ("OPM") under 5 C.F.R. § 335.103 (1987) to

1. The FLRA also held that the proposal did not infringe upon Treasury's reserved management right to select employees under 5 U.S.C. § 7106(a)(2)(C) (1982). 24 F.L.R.A. at 497–99. Treasury has not appealed this determination. *See* Brief for Petitioner at 8 n. 5. Hence, we express no opinion on the consonance of NTEU's proposed provision with section 7106.

2. 5 U.S.C. § 2301(b)(1) contains the following "merit system principle":
   Recruitment should be from qualified individuals from appropriate sources in an endeavor to achieve a work force from all segments of society, and selection and advancement should be determined solely on the basis of relative ability, knowledge, and skills, after

fair and open competition which assures that all receive equal opportunity.

3. 5 U.S.C. § 2302(b)(6), under the title "Prohibited personnel practices," reads as follows:
   (b) Any employee who has authority to take, direct others to take, recommend, or approve any personnel action, shall not, with respect to such authority—
   (6) grant any preference or advantage not authorized by law, rule, or regulation to any employee or applicant for employment (including defining the scope or manner of competition or the requirements for any position) for the purpose of improving or injuring the prospects of any particular person for employment[.]

implement 5 U.S.C. § 2301(c)(1).[4] The FPM sets forth two "merit promotion requirements" relevant to this dispute. Requirement 1 provides that "[a]ctions under a promotion plan—whether identification, qualification, evaluation, or selection of candidates—shall be made without regard to political, religious, or labor organization affiliation or nonaffiliation, marital status, race, color, sex, national origin, nondisqualifying handicap, or age, and shall be based solely on job-related criteria." FPM, ch. 335, subch. 1–4, Requirement 1. Requirement 4 states, in part, that "[s]election procedures will provide for management's right to select or not select from among a group of best qualified candidates." *Id.,* Requirement 4.

In making its selection, however, management need not consider all applicants or potential candidates for a position. Management may restrict its search, in the first instance, to an "area of consideration," defined as "the area in which the agency makes an intensive search for eligible candidates in a specific promotion action." FPM, ch. 335, subch. 1–2(e). The choice of an area of consideration, however, is subject to three overlapping requirements. First, the *minimum* area of consideration is defined as "the area designated by the promotion plan in which the agency should reasonably expect to locate enough high quality candidates, as determined by the agency, to fill vacancies in the positions covered by the plan." *Id.* Second, Requirement 2 reiterates this condition by enjoining, in part: "Areas of consideration must be sufficiently broad to ensure the availability of high quality candidates, taking into account the nature and level of the positions covered." *Id.,* subch. 1–4, Requirement 2. Third, the choice of

an area of consideration must conform to Requirements 1 and 4, as set out above.

The FLRA found that the proposed contract provision did not run afoul of FPM requirements because it only specified the area of consideration on which the agency must initially focus when filling positions, and FPM regulations "allow agencies wide discretion in selecting the area of consideration.... Nothing in this section of the FPM precludes an agency from determining that a bargaining unit will supply a sufficient quantity of high quality candidates and, thus, is an appropriate area of consideration." 24 F.L.R.A. at 496–97. The FLRA also noted that the provision did not refer to the criteria by which positions were to be filled, and therefore did not offend FPM Requirement 1 by preventing management from choosing candidates solely on the basis of job-related criteria. *Id.* at 497. Finally, the FLRA emphasized that the provision permitted management to consider applicants from outside the bargaining unit once it had evaluated the qualifications of those inside it, and that FLRA precedent had consistently found such proposals to be negotiable. *Id.* Hence, the FLRA concluded, the provision "is not inconsistent with either 5 U.S.C. § 2301(b)(1) or with FPM Chapter 335." *Id.*

Second, the FLRA determined that the provision's requirement that management wait ten days before expanding its area of consideration beyond the compass of the bargaining unit did not constitute a prohibited personnel practice within the meaning of 5 U.S.C. § 2302(b)(6), because it did not mandate that management choose an employee within the bargaining unit for the open position. *Id.*

Treasury seeks review, and the FLRA enforcement, of the FLRA's determination of negotiability and its order to rescind

4. 5 U.S.C. § 2301(c)(1) requires the President to "take any action, including the issuance of rules, regulations, or directives" to implement merit system principles with respect to executive agencies. The implementing regulation regarding promotions is 5 C.F.R. § 335.103, which requires agencies to make promotions according to merit, in conformity "with the standards and requirements of OPM." OPM's requirements are contained in the FPM.

FPM requirements are Government-wide rules or regulations for purposes of 5 U.S.C. § 7117(a). *See AFGE, Local 2782 v. FLRA,* 803 F.2d 737, 741–42 (D.C.Cir.1986). Bargaining proposals that are inconsistent with them thus lie outside the scope of an agency's duty to bargain in good faith.

disapproval of the tentative contract provision. *See* 5 U.S.C. § 7123.

## II. ANALYSIS

### A. *Standard of Review*

■ Under the law of this circuit, when an agency interprets a statute other than that which it has been entrusted to administer, its interpretation is not entitled to deference. As we said recently in a case involving the FLRA's reading of the Back Pay Act:

> Because the FLRA's refusal to award back pay did not rest on an interpretation of its organic statute, but rather on its reading of the Back Pay Act—a general statute—the FLRA's interpretation is entitled to respect before this court, but we are not bound by its construction of the statute even if reasonable. We are therefore called upon to engage in a de novo interpretation of the statute, guided, of course, by Congressional intent.

*Professional Airways Sys. Specialists v. FLRA,* 809 F.2d 855, 857 n. 6 (D.C.Cir.1987) (citations omitted); *see also AFGE, Local 2782 v. FLRA,* 803 F.2d 737, 740 n. 1 (D.C. Cir.1986) (according no deference to the FLRA's reading of the FPM); *INS v. FLRA,* 709 F.2d 724, 729 n. 21 (D.C.Cir. 1983) ("[The FLRA's] reconciliation involves interpreting a statutory provision not within its enabling statute—a provision not within its expertise. Hence we need not defer to it."). The FLRA's decision in this case rests on its interpretation of 5 U.S.C. §§ 2301 and 2302 and the FPM, none of which is a constituent of or issued pursuant to the statute the FLRA administers—the Federal Service Labor–Management Relations Act. We therefore accord the FLRA's construction of these statutory provisions and regulations no deference, although we shall, of course, follow its reasoning to the extent that we deem it sound.[5]

### B. *The Requirement that Consideration Be Given First to Bargaining–Unit Members*

The contract provision at issue may usefully be divided into two parts. First, management would be required to consider for promotion qualified members of the bargaining unit before it considered persons from outside the bargaining unit. Second, management would have to wait ten days after its receipt of a list of qualified bargaining-unit members before reviewing the qualifications of people who did not belong to the bargaining unit. Treasury challenges the first requirement as inconsistent with 5 U.S.C. § 2301(b)(1) and FPM regulations, and contends that the second requirement violates 5 U.S.C. § 2302(b)(6).

#### 1. *Section 2301(b)(1) Does Not Alone Provide a Basis for Legal Action*

In considering the first of Treasury's objections, we are confronted, at the outset, by the question whether Treasury may base its allegation of nonnegotiability on section 2301(b)(1) directly, as it attempts to do in part, or whether it must rely exclusively on FPM regulations designed to implement that statutory merit system principle. In its decision below, the FLRA answered this question equivocally. Although it initially purported to address "the argument that the provision conflicts with 5 U.S.C. § 2301(b)(1), *as implemented by the FPM,*" 24 F.L.R.A. at 496 (emphasis added), the FLRA concluded its analysis by finding the provision "not inconsistent with *either* 5 U.S.C. § 2301(b)(1) *or* with FPM Chapter 335." *Id.* at 497 (emphasis added). In its brief to this court, however, the FLRA asserts that "an alleged inconsisten-

---

**5.** The FLRA's suggestion that the law of this circuit conflicts with the Supreme Court's holding in *Bureau of Alcohol, Tobacco & Firearms v. FLRA,* 464 U.S. 89, 104 S.Ct. 439, 78 L.Ed.2d 195 (1983), is simply mistaken. In that case, the Court did *not* say that courts should defer to the FLRA even when it is interpreting a statute other than its enabling act. In fact, the Court's allusion to this situation seems in harmony with the rule of this circuit. In *BATF,* the Court found that any deference due was warranted only because the FLRA's decision "derived primarily" from its interpretation of part of its enabling statute. *Id.* at 98 n. 8, 104 S.Ct. at 444 n. 8. However, the FLRA cannot advance a similar claim in this case, because the proper reading of the FPM and sections 2301 and 2302 is alone at issue.

cy with merit system principles, alone, would not form ... a basis for finding a proposal outside the duty to bargain." Brief for the FLRA at 21 n. 16.[6] Treasury does not challenge this claim explicitly, but it rejects it implicitly by arguing first that the contested provision fails to accord with section 2301(b)(1), and then that it cannot be squared with FPM requirements either.

■ In listing fairly general merit system principles, section 2301(b) merely says that "[f]ederal personnel management should be implemented consistent with" them. Section 2301(c) then enjoins the President to "take any action, including the issuance of rules, regulations, or directives," that he "determines is necessary to ensure that personnel management is based on and embodies the merit system principles." The statute therefore seems to contemplate that regulations issued pursuant to section 2301, rather than the vague principles it contains, would form the operative basis for claims arising under that section. This reading of the statute is consistent with the issue framed by the FLRA below, *i.e.*, whether the union proposal conflicts with 5 U.S.C. § 2301(b)(1), *as implemented by the FPM*.

The legislative history of the Civil Service Reform Act of 1978, Pub.L. No. 95–454, 92 Stat. 1111, strongly supports this view. The Joint Explanatory Statement of the Committee on Conference states unambiguously that "[u]nless a law, rule or regulation implementing or directly concerning the principles is violated (as under section 2302(b)(11)), the principles themselves may not be made the basis of a legal action by an employee or agency." S.Rep. No. 1272, 95th Cong., 2d Sess. 128 (1978), U.S.Code Cong. & Admin.News 1978, p. 2723. Section 2302(b)(11),[7] the Conference Committee Report further explains, "would make unlawful the violation of a law, rule, or regulation implementing or directly concerning the merit system principles but which do not fall within the first 10 categories of prohibited personnel practices" listed in section 2302(b). *Id.* at 131.

Sections 2301 and 2302 were therefore intended to work in tandem. Section 2301 sets forth a number of merit system principles and commands the President to issue regulations applying those principles to executive agency personnel practices. Section 2302, entitled "Prohibited personnel practices," describes various actions that agencies are forbidden to undertake because they would violate the merit system principles contained in the preceding section. Among those forbidden actions one finds, not surprisingly, conduct contrary to the rules and regulations required by section 2301 to implement the broad directives it contains. Section 2302 does not, however, prohibit practices that it fails to list explicitly or that do not contravene agency regulations intended to embody the principles stated in section 2301. It follows that Treasury may only object to NTEU's proposed provision on the ground that it would constitute one of the ten prohibited personnel practices listed in section 2302 or offend regulations issued pursuant to section 2301 to implement that section's merit system principles. Since Treasury apparently does not claim that the first part of the provision should be classified among the prohibited personnel practices defined in detail in section 2302, its objection can only be founded upon the FPM regulations.[8]

---

**6.** The FLRA has largely adhered to this view in prior decisions. *See, e.g., AFGE, Local 987 and Headquarters, Warner Robins Air Force Logistics Command, Robins Air Force Base, Ga.*, 8 F.L.R.A. 667, 676–77 (1982), *rev'd as to other matters sub nom. United States Air Force v. FLRA*, 727 F.2d 1502 (11th Cir.1984). Some FLRA decisions, however, show the same equivocation the FLRA displayed in its decision below in this case. *See, e.g., Association of Civilian Technicians, Inc., Pa. State Council and Adjutant General, Dep't of Military Affairs, Pa.*, 4 F.L.R.A. 77, 80–81 (1980) (ruling that union proposal would not conflict with 5 U.S.C. § 2301(b)(1), even though FPM regulations were inapplicable).

**7.** Section 2302(b)(11) proscribes any action or omission that "violates any law, rule, or regulation implementing, or directly concerning, the merit system principles contained in section 2301 of this title."

**8.** Although Treasury does say that the proposed provision "cannot be squared with section 2302(b)(6)'s admonition against improperly narrowing 'the scope ... of competition ... for any position,'" Brief for Petitioner at 19, it is unclear whether this statement refers to the first part of the provision or to the requirement that management wait ten days before expanding the initial area of consideration. If Treasury in-

## 2. *The Bargaining Unit as an Initial Area of Consideration*

In its decision, the FLRA noted that the FPM grants agencies abundant discretion in selecting an "area of consideration" when they seek to fill a vacant position. It therefore found no bar to the designation of a bargaining unit as an area of consideration unless that choice were plainly unreasonable. 24 F.L.R.A. at 496–97.

The FLRA's reasoning is compelling. The first part of the proposed provision would not require management to choose a bargaining-unit member for promotion, nor would it obligate management to make its selections in accordance with criteria that are not job-related. Management could always look beyond the bargaining unit for people to fill open positions, and it could make its selection on the basis of whatever reasonable standards it deemed appropriate. Hence, the provision cannot possibly violate FPM Requirement 4 which says that "[s]election procedures will provide for management's right to select or not select from among a group of best qualified candidates." FPM, ch. 335, subch. 1–4, Requirement 4. Nor does Treasury contend that the bargaining unit in this case is not "sufficiently broad to ensure the availability of high quality candidates," as Requirement 2 stipulates, particularly given management's right to expand its initial area of consideration at will. Treasury's only serious objection is that the initial consideration of bargaining-unit members would offend Requirement 1, because it would be an action under a promotion plan that is not "based solely on job-related criteria."

Treasury's argument begins from the premise that "membership in the bargaining unit is unrelated to merit." Brief for Petitioner at 17. The designation of the bargaining unit as an area of consideration, Treasury contends, necessarily excludes from initial consideration some employees who are likely to be fully as qualified for the vacant position as are members of the bargaining unit. It offers as an example so called "confidential employees," who may work alongside bargaining-unit employees but who are statutorily excluded from the unit because of their close connection, usually in a clerical or secretarial capacity, to certain management officials.[9] If such employees are excluded from the initial area of consideration, despite their comparable abilities, then the choice of the bargaining unit as an area of consideration, Treasury argues, cannot possibly be based entirely on merit or job-related criteria. Ergo, the proposed provision violates FPM Requirement 1.

The flaw in Treasury's argument is that Requirement 1's directive that the identification of candidates for promotion be based on job-related criteria, when read in light of Requirement 2's generous grant of discretion to management to choose areas of consideration, is not as rigorous a condition as Treasury alleges. The goal of Requirement 2, as Treasury acknowledges, "is to secure, in a convenient and practical fashion, a pool of qualified candidates to fill the vacancy." Reply Brief for Petitioner at 6. In defining that pool, Treasury admits, management often does, and under FPM regulations clearly may, limit consideration to applicants from a certain geographical area or the agency itself. Reply Brief for Petitioner at 5. As a practical matter, management must be able to limit its search for employees to fill open positions. So long as it does so on grounds, other than those expressly prohibited by Requirement 1, that bear some reasonable connection to the necessary qualifications for the

tended this statement to apply to the first part of the provision, its claim is erroneous. As the following discussion shows, restricting the initial area of consideration to the bargaining unit is authorized by the FPM. It therefore follows that section 2302(b)(6) does not come into play, since it applies only to "any preference or advantage *not* authorized by law, rule, or regulation" (emphasis added).

**9.** Section 7112(b)(2) states that a bargaining unit shall not be determined to be appropriate if it includes "a confidential employee," defined in section 7103(a)(13) as "an employee who acts in a confidential capacity with respect to an individual who formulates or effectuates management policies in the field of labor-management relations."

vacant positions, so that the pool will likely yield enough high-quality candidates, management does not offend the merit system requirements set forth in the FPM. The choice of a bargaining unit as an area of consideration is no less reasonable than the choice of an agency office in a particular city, which Treasury concedes would be permissible. In both cases, management might reason that current employees familiar with the agency's operations would ensure an ample pool of high-quality candidates for an open position. Therefore, the restriction of consideration to them, in the first instance, plainly would be permissible.

Treasury objects that it is arbitrary to focus on the bargaining unit and thereby exclude from consideration other workers, such as "confidential employees," who work side by side with bargaining-unit members and who are apt to be similarly qualified. Some arbitrariness, however, is inevitable in defining an area of consideration. Restricting consideration to employees of a given agency might exclude equally able employees who worked alongside them in the same building, or even in the same office, merely because they were employed by a different executive agency or department. The proposed provision, to be sure, might disadvantage any "confidential employees" in the Bureau of Engraving and Printing who were eligible for and desired a position that became vacant.[10] But such employees are disadvantaged every day relative to bargaining-unit members because Congress decided to bar them from the benefits of collective bargaining when it drafted the Federal Service Labor-Management Relations Statute. That disadvantage may seem unfair, and the policy concerns that prompted it may be questionable, but the decision to create it, once taken by Congress, is not for this court to override.

■ We therefore uphold the FLRA's determination that a contract provision limiting consideration initially to members of a bargaining unit is not inconsistent with section 2301(b)(1) as implemented by FPM requirements.

### C. *The Ten–Day Waiting Period*

The second part of the proposed provision would require management to wait ten days after receiving a list of qualified bargaining-unit employees before considering for a position candidates who do not belong to the bargaining unit. The FLRA ruled that this requirement did not constitute a "preference or advantage not authorized by law, rule, or regulation ... for the purpose of improving or injuring the prospects of any particular person for employment," as prohibited by section 2302(b)(6). 24 F.L. R.A. at 497. In the FLRA's view, it is sufficient that the provision would not have compelled management to select a member of the bargaining unit for a vacant position, even if it would have briefly delayed hiring from outside the unit.[11]

■ We agree. Section 2302(b)(6) is directed at purposeful discrimination to help or hinder particular individuals in obtaining employment without regard to their merit. The effect of the proposed provision, however, as NTEU has pointed out, "is to encourage complete and comprehensive consideration of bargaining unit employees before the selecting official utilizes alternative staffing methods to fill vacant positions." Letter from John McEleney to Executive Director, FLRA (July 8, 1983), *reprinted in* App. 5. It would merely reinforce the initial restriction of the area of consideration to the bargaining unit, which we have already held to be consistent with merit system principles as implemented by the FPM. It would not require or, in the circumstances of this case, likely induce management to select employees on grounds other than merit. *Cf. AFGE, Local 2782 v. FLRA,* 803 F.2d 737 (D.C.Cir. 1986) (upholding FLRA determination that union proposal that would have required

---

**10.** Neither the record nor the briefs indicate whether there are any "confidential employees" in the Bureau and, if so, how many.

**11.** We are not faced with a situation in this case where the proposed delay is so long—say, for a year or two—as to result in a subterfuge disguising an unalterable preference in favor of bargaining-unit employees.

management to promote to vacant positions employees previously demoted without fault conflicted with the FPM). It therefore does not fall within the prohibition of section 2302(b)(6).[12]

### III. CONCLUSION

Because the proposed contract provision would not offend statutory merit system principles, as embodied in section 2302(b)(6) and FPM requirements, we deny Treasury's petition for review and grant the FLRA's request for enforcement of its order requiring Treasury to rescind its disapproval of the provision.

*So ordered.*

---

**12.** Whether the ten-day delay requirement is nonnegotiable because it would impair management's right to select under 5 U.S.C. § 7106(a)(2)(C), as Chairman Calhoun argued in dissent, 24 F.L.R.A. at 500–01, or whether it constitutes a negotiable "procedure" under 5 U.S.C. § 7106(b)(2), as the other two Members contended, 24 F.L.R.A. at 497–99, is a more difficult question. We offer no opinion on its proper resolution, however, because Treasury has not raised this issue on appeal.