DEPARTMENT OF INTERIOR, BUREAU OF LAND MANAGEMENT, Petitioner,

v.

FEDERAL LABOR RELATIONS AUTHORITY, Respondent,

National Federation of Federal Employees, Intervenor.

No. 87–1838.

United States Court of Appeals, District of Columbia Circuit.

Argued Jan. 10, 1989.

Decided May 9, 1989.

---

Jeffrey Clair, Attorney, Dept. of Justice, with whom John R. Bolton, Asst. Atty. Gen. and William Kanter, Attorney, Dept. of Justice, Washington, D.C., were on the brief, for petitioner.

Peter R. Maier, Washington, D.C., also entered an appearance, for petitioner.

Pamela P. Johnson, Attorney, Federal Labor Relations Authority, with whom William E. Persina, Acting Sol., and James F. Blandford, Attorney, Federal Labor Relations Authority, Washington, D.C., were on the brief, for respondent.

Ruth E. Peters and Arthur A. Horowitz, Attorneys, Federal Labor Relations Authority, Washington, D.C., also entered appearances, for respondent.

H. Stephen Gordon, Gen. Counsel, Alice L. Bodley, Deputy General Counsel, and Anne L. Morgan, Attorney, National Federation of Federal Employees, Washington, D.C., were on the brief, for intervenor.

Bruce P. Heppen, Washington, D.C., also entered an appearance, for intervenor.

Before EDWARDS, WILLIAMS, and SENTELLE, Circuit Judges.

Opinion for the Court filed by Circuit Judge SENTELLE.

SENTELLE, Circuit Judge:

Pursuant to the Federal Service Labor–Management Relations Statute, as amended,[1] ("FSLMRS" or "Statute"), the Department of Interior ("Interior" or "agency") petitions for review of a decision of the Federal Labor Relations Authority ("FLRA" or "Authority") ordering negotiation over two provisions of a proposed collective bargaining agreement between the Bureau of Land Management ("Bureau") and the intervenor, National Federation of Federal Employees ("NFFE" or "union"). *National Fed'n of Gov't Employees and Dep't of Interior, Bureau of Land Management,* 29 F.L.R.A. 1491 (1987). The first provision would require the Bureau to delay an employee's suspension until at least ten days after the date of a decision letter ordering suspension. The second provision would require the Bureau to withhold termination of an employee with acknowledged medical or behavorial problems when the employee obtained professional assistance. We deny Interior's petition for review of the first provision and grant it as to the second.

---

1. 5 U.S.C. §§ 7101–35 (1982 and Supp. IV 1986).

## I. Background

NFFE submitted a proposed collective bargaining agreement with the Bureau to Interior for agency head approval pursuant to section 7114(c) of the FSLMRS.[2] Interior disapproved the agreement, contending that several of its provisions—including the two in dispute here—were outside its obligation to bargain under the FSLMRS. Interior concluded that the provisions instead fell within its exclusive management rights under section 7106(a) of the FSLMRS.

Section 7106 establishes exclusive managerial authority over certain matters, thereby reserving those from negotiation. The section in pertinent part reads:

§ 7106. Management rights

(a) Subject to subsection (b) of this section, nothing in this chapter shall affect the authority of any management official of any agency—

.    .    .    .    .

(2) in accordance with applicable laws—

(A) to hire, assign, direct, layoff, and retain employees in the agency, or *to suspend, remove, reduce in grade or pay, or take other disciplinary action against such employees;*

(B) *to assign work,* to make determinations with respect to contracting out, and to determine the personnel by which agency operations shall be conducted;

.    .    .    .    .

(b) Nothing in this section shall preclude any agency and any labor organization from negotiating—

.    .    .    .    .

(2) *procedures which management officials of the agency will observe in exercising any authority under this section....*

5 U.S.C. § 7106 (1982) (emphasis added).

In the first of the two provisions before us, Provision 9, only one sentence is in dispute. The disputed language requires the Bureau to withhold implementing an employee suspension of fourteen days or fewer until at least ten days after a Bureau decision letter ordering the suspension. The provision reads in full:

When the Employer proposes a suspension of an employee for fourteen (14) days or less [pursuant to the Civil Service Reform Act of 1978], the employee shall be given written notice of the proposed suspension which shall:

(1) contain the specific reasons for the proposed suspension;

(2) inform the employee of the right to union representation;

(3) provide at least fifteen (15) calendar days in which the employee may answer the proposal orally and/or in writing;

(4) contain the name of the official to whom an answer may be directed; and

(5) inform the employee that any request for an extension of time in which to reply must be made to the deciding official prior to the expiration of the specified notice period.

The deciding official must not be the proposing official. A decision by the deciding official must be made as soon as practicable following the reply or the expiration of the notice period. The deciding official will give every reasonable consideration to the written and/or oral response of the employee in his/her decision to suspend or not suspend the employee. *The effective date of a suspension under this article will not be less than ten (10) days from the date of the decision letter.*

29 F.L.R.A. at 1522 (emphasis added). Interior disputes only the negotiability of the emphasized language, contending that the ten-day delay substantively affects the impact of a suspension, and thereby violates section 7106(a)(2)(A), which explicitly grants to an agency exclusive authority to "suspend" employees. In essence, Interior argues that delay may diminish the effectiveness of an immediate suspension and may require the Bureau to retain for ten days a disruptive employee who should immediately be suspended to minimize the

**2.** 5 U.S.C. § 7114(c).

adverse effects in the workplace of the employee's conduct. Interior also argues that the provision violates section 7106(a)(2)(B) which permits an agency "to assign work"; presumably, if an employee is suspended but the suspension is delayed for ten days, the agency may not effectively assign to the employee any project that might take more than ten days to complete.

The second disputed provision, Provision 16(c), prohibits the Bureau from terminating an employee with a medical or behavioral problem until the employee has the opportunity to seek professional help.

> No employee acknowledging medical/behavioral problems shall be terminated without first having the opportunity to avail himself/herself of professional help....

*See* 29 F.L.R.A. at 1518. Interior disapproved this provision, arguing that it also violates section 7106(a)(2)(A), which exclusively grants to an agency the authority "to take ... disciplinary action" against employees.

Pursuant to section 7117(c) of the FSLMRS, 5 U.S.C. § 7117(c), NFFE filed a negotiability appeal to the FLRA. In a two-to-one decision, the FLRA concluded, *inter alia*, that the two provisions were negotiable under its "acting at all" standard, and therefore ordered Interior to rescind its disapproval of the proposals. *National Fed'n of Gov't Employees and Dep't of Interior, Bureau of Land Management*, 29 F.L.R.A. 1491 (1987).[3]

The FLRA first articulated the "acting at all" standard in *United States Customs Service, Region VIII*, 2 F.L.R.A. 25 (1979).

Although originally upheld by this Court in *Department of Defense v. FLRA*, 659 F.2d 1140 (D.C.Cir.1981), *cert. denied*, 455 U.S. 945, 102 S.Ct. 1443, 71 L.Ed.2d 658 (1982), it has been criticized by several recent panels.[4] Nonetheless, *Department of Defense v. FLRA* remains the law of the Circuit.

The "acting at all" standard looks to the agency's ability to act under a given proposal of a labor organization. If the agency is not prohibited from "acting at all," then it is possible the proposal does not affront the agency's exclusive management rights. The standard requires a two-step determination. First, it must be determined whether the proposal is "purely procedural." *National Fed'n of Fed. Employees, Local 1745 v. FLRA*, 828 F.2d 834, 840 (D.C.Cir.1987); *United States Customs Service v. FLRA*, 854 F.2d 1414, 1418 (D.C. Cir.1988).

Based on this first finding, step two requires that one of two alternative routes be followed. If the proposal is "purely procedural," it is negotiable under section 7106(b)(2) "unless the proposal, if adopted, would prevent the agency from 'acting at all,'" *National Fed'n of Fed. Employees, Local 1745*, 828 F.2d at 840 (citation omitted). *See also Customs Service*, 854 F.2d at 1417–18. "If, however, the proposal 'stand[s] close to the uncertain border between procedure and substance, [then it] is deemed nonnegotiable if its adoption would directly interfere with management's reserved authority.'" *Id.* at 1418 (quoting *National Fed'n of Fed. Employees, Local 1745*, 828 F.2d at 840) (other citations omitted); *see also Department of the Treasury, BATF v. FLRA*, 857 F.2d 819, 821

---

**3.** The FLRA determined the negotiability of sixteen proposals in its decision; it held nine negotiable, two negotiable in part, and the remainder nonnegotiable. *See* 29 F.L.R.A. at 1491. We, of course, review only the two proposals presented to us on appeal.

**4.** While acknowledging that *Department of Defense* is the law of the Circuit, panels of this Court have recently questioned the standard's intellectual basis. For example, in *United States Customs Service v. FLRA*, 854 F.2d 1414 (D.C. Cir.1988), Judge D.H. Ginsburg wrote:

> we approach this case still plagued by "doubt whether [the 'acting at all' standard] is either theoretically sound or practically susceptible

of principled application," because the results it yields depend so vitally on how the FLRA chooses to characterize the particular proposal under scrutiny.

*Id.* at 1418 (quoting *National Fed'n of Fed. Employees, Local 615 v. FLRA*, 801 F.2d 477, 481–82 (D.C.Cir.1986)). *See also Defense Logistics Council v. FLRA*, 810 F.2d 234, 242 (D.C.Cir. 1987) (Williams, J., concurring in part and dissenting in part) ("the FLRA['s] ... definition of the management right [in question] tends to control the determination of whether the procedure prevents the agency from exercising its authority 'at all' ").

(D.C.Cir.1988); *American Fed'n of Gov't Employees v. FLRA*, 819 F.2d 306, 308 (D.C.Cir.1987); *National Fed'n of Fed. Employees, Local 1167 v. FLRA*, 681 F.2d 886, 892 n. 8 (D.C.Cir.1982).

## II. STANDARD OF REVIEW

■ The FSLMRS requires that orders of the FLRA be reviewed in accordance with section 706 of the Administrative Procedure Act, 5 U.S.C. § 7123(c). *See also Department of the Treasury, BATF*, 857 F.2d at 820–21. Because the FLRA is the agency charged by Congress to administer the FSLMRS, we may set aside a FLRA decision interpreting the FSLMRS only if it is "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. § 706(2)(A). *See Department of the Treasury, BATF*, 857 F.2d at 821; *EEOC v. FLRA*, 744 F.2d 842, 847 (D.C.Cir.1984), *cert. dismissed*, 476 U.S. 19, 106 S.Ct. 1678, 90 L.Ed.2d 19 (1986).

■ While Congress intended that the FLRA should determine whether issues are bargainable under the FSLMRS, *see National Treasury Employees Union v. FLRA*, 691 F.2d 553, 561 (D.C.Cir.1982), the Supreme Court has reminded us that we are not judicial rubber stamps, *Bureau of Alcohol, Tobacco & Firearms v. FLRA*, 464 U.S. 89, 97, 104 S.Ct. 439, 444, 78 L.Ed.2d 195 (1983); *Department of the Treasury, BATF*, 857 F.2d at 821, and must set aside a FLRA decision that is not "reasonable and defensible." *Cf. Bureau of Alcohol, Tobacco & Firearms v. FLRA*, 464 U.S. at 97, 104 S.Ct. at 444, *Department of the Treasury, BATF*, 857 F.2d at 821.

Thus, if the FLRA's decision, including its application of the "acting at all" standard, "is inconsistent with the plain language" of the FSLMRS, then this Court may grant the petition of review. *Customs Service*, 854 F.2d at 1418–19 (citing *Chevron U.S.A. Inc. v. Natural Resources Defense Council, Inc.*, 467 U.S. 837, 842–45, 104 S.Ct. 2778, 2781–83, 81 L.Ed.2d 694 (1984); *Bureau of Alcohol, Tobacco & Firearms*, 464 U.S. 89, 97, 104 S.Ct. 439, 444, 78 L.Ed.2d 195 (1983)).

## III. ANALYSIS

A. *Provision 9.* While the FLRA has not provided us a clear record, we can discern the path of its reasoning and ultimate conclusion that it must have assumed Provision 9 was "purely procedural." *Cf. Bowman Transp., Inc. v. Arkansas–Best Freight System, Inc.*, 419 U.S. 281, 286, 95 S.Ct. 438, 442, 42 L.Ed.2d 447 (1974) (court "will uphold a decision of less than ideal clarity if the agency's path may be reasonably discerned") (citation omitted).[5] The Authority apparently assumed Provision 9 was "purely procedural." It started its analysis with the second step of the two-step process and concluded that Provision 9 did "not prevent management from acting at all in the exercise of its reserved rights...." 29 F.L.R.A. at 1525.

The Authority reasoned that Provision 9 was similar to a proposal in *National Treasury Employees Union and Dep't of the Treasury*, 24 F.L.R.A. 494 (1986), *aff'd sub nom. Department of the Treasury v. FLRA*, 837 F.2d 1163 (D.C.Cir.1988). *See* 29 F.L.R.A. at 1525.[6] In *National Treasury Employees Union*, the FLRA held negotiable a proposal requiring management to wait ten days after receiving a list

---

5. *See also Smith v. Bowen*, 826 F.2d 1120, 1122 n. 2 (D.C.Cir.1987).

6. The FLRA also distinguished its decision in *National Fed'n of Fed. Employees and U.S. Dep't of the Interior, U.S. Geological Survey, Eastern Mapping Agency*, 21 F.L.R.A. 1105 (1986). In that decision, the Authority held nonnegotiable a proposal that would require an agency to delay for ten days implementing any disciplinary action resulting in removal. The Authority distinguished that proposal from the instant one because that proposal would prevent an agency

from exercising its statutory right immediately to terminate an employee when there was reasonable cause to believe the employee had committed a crime punishable by imprisonment. 29 F.L.R.A. at 1525–26. *See also* 5 U.S.C. § 7513(b)(1). The Authority also reasoned that such a proposal would prevent management from "effective[ly holding] accountable" for assigned work an employee who knows that he or she loses his position after the ten-day period. 29 F.L.R.A. at 1526.

of qualified bargaining-unit employees before considering for promotion nonbargaining-unit employees. The FLRA in that case concluded that the proposal did not preclude the agency from acting at all; rather it only incidentally delayed agency action to insure full consideration of bargaining-unit employees. *See* 24 F.L.R.A. at 497–98. This Court affirmed the Authority's decision, holding that the proposal would only " 'encourage complete and comprehensive consideration of bargaining[-]unit employees' ... [and] would not require or ... likely induce management to select employees on grounds other than merit." *Department of the Treasury,* 837 F.2d at 1170 (citations omitted).

While we agree with recent panel decisions that the "acting at all" standard is subject to abuse based on "how the FLRA chooses to characterize the particular proposal," *Customs Service,* 854 F.2d at 1418,[7] we are bound under *stare decisis* to abide by our original acquiescence to the standard in *Department of Defense,* 659 F.2d 1140, until the Highest Court or this Court sitting *en banc* reverses the decision. *See Air Line Pilots Ass'n v. Dep't of Transp.,* 838 F.2d 563, 565 n. 3 (D.C.Cir.1988); *Association of Civilian Technicians v. FLRA,* 756 F.2d 172, 176 (D.C.Cir.1985); *Brewster v. Comm'r of Internal Revenue,* 607 F.2d 1369, 1373 (D.C.Cir.) (per curiam), *cert. denied,* 444 U.S. 991, 100 S.Ct. 522, 62 L.Ed. 2d 420 (1979).

■ *Department of Defense* and its progeny all hold, nothing else appearing, that timing in matters of discipline is procedural and therefore subject to negotiation because the agency is not barred from "acting at all." The same application of the "acting at all" standard to matters of suspension is found in three cases of this Court, including *Department of Defense:*

> While the proposals may delay proceedings against an employee, "the issue [is] *when,* not *whether,* the agency could execute its management right to remove or

suspend an employee.... A stay pending resort to the grievance procedure might postpone enforcement of a management right, but that delay alone ... 'would not take a proposal outside the statutory obligation to negotiate.' "

*Defense Logistics Council v. FLRA,* 810 F.2d 234, 241 (D.C.Cir.1987) (emphasis in original) (proposal to allow employee to request a stay of suspension of certain driving privileges for intoxication to insure that grievance procedures under other proposals are followed) (quoting *National Treasury Employees Union v. FLRA,* 712 F.2d 669, 672–73 (D.C.Cir.1983) (proposal to stay execution of adverse personnel actions pending review through administrative channels)). *National Treasury Employees Union* in turn cites *Department of Defense* [8] for the same proposition that, under the "acting at all" standard, a proposal involving suspension procedures which only looks to when the suspension may be effectuated, not whether the suspension may be effectuated, is within the statutory duty to bargain. *National Treasury Employees Union,* 712 F.2d at 674 (citing *Department of Defense,* 659 F.2d at 1153).

■ In light of *stare decisis,* we must conclude that a ten-day delay in suspension after the agency issues a decision letter, which *does not* bar an agency from suspending an employee, is negotiable.

While Interior makes a colorable argument that a delay of a suspension may undermine the immediate effect of the suspension and therefore substantively reduce the agency's reserved right to suspend an employee under section 7106(a)(2)(A), Interior does not overcome the weight of precedent which requires us under the "acting at all" standard to look to *whether* the agency can suspend an employee. Here Interior can suspend the employee, albeit ten days later than it would prefer. Interior also argues that its managerial right to suspend immediately a disruptive employee from

---

**7.** *See supra* note 4.

**8.** In *Department of Defense,* the proposal at issue required, *inter alia,* that removal or suspension of an employee be stayed pending comple-

tion of review procedures provided for in the collective bargaining agreement. 659 F.2d at 1152–53.

the workplace is substantively diminished. We cannot accept this argument in this case since Interior has already agreed to negotiate over certain procedures which would have the effect of retaining disruptive employees for more than ten days, including a fifteen-day period for the employee to respond to a written notice of proposed suspension. *See* Provision 9, *supra.*

Interior further argues that its managerial right to assign work under section 7106(a)(2)(B) is substantively affected because it cannot assign to an employee whose suspension is pending any work lasting more than ten days. We conclude that this concern is overstated because, as the FLRA argued, the Bureau for Interior determines when a suspension takes effect under Provision 16(c). A suspension will take effect *no fewer* than ten days after the Bureau issues a decision letter. If an employee is assigned work which lasts more than ten days, the Bureau can refrain from issuing the suspension letter until it determines the assigned work is near completion or can direct that the suspension take effect after the completion of the assigned work so long as that period is at least ten days.

Interior argues that *Customs Service v. FLRA*, 854 F.2d 1414, compels us to hold that the ten-day delay in the present case affects managerial rights. In that case the negotiability question involved a union proposal that the implementation of a new Customs Service program to streamline the inspection of vessels arriving at specific ports be held in abeyance "pending a study to be carried out, within six months, by [the union] to evaluate on [sic] the impact of [the program] on bargaining unit employees." 854 F.2d at 1416 (insertions other than "[union]" in the original). We held that the proposal did directly interfere with management rights since "a decision regarding the timing of a program's implementation ... is part and parcel of the reserved management right to determine the means by which an agency's work will be performed. It is a substantive, and not at all a procedural, decision." *Id.* at 1419.

This case is, however, distinguishable. In contrast to *Customs Service*, the proposal is genuinely linked to the decision-making procedure. Interior concedes that employees could appeal suspension decisions through a grievance and arbitration process. *See* Petitioner's Reply Brief at 5 n. 1. Thus the provision is in a sense similar to this Court's Rule 15(b)(2), automatically staying the Court's mandate until expiration of the time for filing a petition for rehearing or suggestion for rehearing *en banc*. Although Provision 9 is not explicitly tied to an employee's use of any remedial procedure, we do not believe that a time certain, of a duration plausibly suitable for a decision to seek such relief, is on that account less procedural. Nor does it prevent the agency from "acting at all" more than does the fifteen-day lapse specified in Provision 9 for an employee to reply to a proposed suspension. *See* Joint Appendix at 122; 5 U.S.C. § 7503(b)(2). A six-month delay in the implementation of a new substantive program invades management's nonbargainable reserved authority and rights "to determine mission, budget, organization, number of employees and ... to assign work and to determine the personnel by which agency operations shall be conducted." 5 U.S.C. § 7106(a)(1) & (2)(B) (1982); *see also Customs Service*, 854 F.2d at 1416. As we held in *Customs Service*, a six-month delay in the implementation of a program to conduct the mission of the agency makes it impossible, at least during the period of delay, for management to exercise these prerogatives. A ten-day delay in the punitive suspension of a single employee does not.

In sum, we conclude that the FLRA did not abuse its discretion in holding Provision 9 negotiable. As to this Provision, Interior's petition for review is denied.

B. *Provision 16(c).* While precedent requires that we deny Interior's petition for review regarding Provision 9, the very same precedent requires that we grant Interior's petition for review of the FLRA's holding regarding Provision 16(c).

Returning to the "acting at all" standard and this Court's ample precedent that re-

quires us to determine if a proposal affects *when* or *whether* an agency can discipline an employee, it is quite clear that Provision 16(c) may affect the very right of the Bureau to terminate an employee. First, the Provision is so ambiguous that we are unable to determine its meaning. Second, arguably an employee with some "behavioral problem" can "avail" himself or herself of professional help for an *indefinite* period such that the Bureau *cannot* suspend the employee at all.

■ We begin by examining the language of the proposal: "No employee *acknowledging* medical/*behavorial* problems shall be terminated without first having the *opportunity to avail* himself/herself of *professional help....*" 29 F.L.R.A. at 1518 (emphasis added). At the risk of belaboring the obvious, the proposal is rife with ambiguity. What is "acknowledging" a problem? What is meant by "behavioral problems"? Does it include inefficient work habits as a result of an employee's domestic or personal problems? Is the "opportunity to avail" oneself of help a continuous and on-going right such that an employee can delay his or her termination over an extended period of months or even years? How long must an agency delay terminating an employee who is "availing" himself or herself of "help"? Finally, what is "professional help"? Does this mean a licensed medical doctor or psychiatrist, or does it merely mean attending a rest and relaxation center without traditional medical supervision? We simply cannot determine whether the Bureau is barred from "acting at all" in terminating an employee. We note that Chairman Calhoun, the dissenter in the FLRA's decision, also was uncertain as to the meaning of Provision 16(c). 29 F.L.R.A. at 1529 (Calhoun, Chr., dissenting) ("In my view, the provision is not sufficiently specific for me to rule on its negotiability.").

Second, even if we assume some answers to the questions above, we can easily construct a situation which would bar the Bureau from "acting at all" when it has legitimate grounds to terminate an employee. Assume an employee is regularly late for work because he frequents a local drinking establishment. When threatened with termination of employment, he "acknowledges" that he has a minor alcohol problem and agrees to seek professional help. Although he enters some long-term substance abuse program, the employee's tardiness does not improve. After a few months, the agency discerns that the employee's nightly consumption of alcohol was only a singular part of the employee's preferred lifestyle of "burning the candle at both ends." Despite this realization, as long as the employee remains enrolled in the program, he could conceivably shield himself from termination.

This is one of many imaginable situations which under Provision 16(c) could bar the Bureau from "acting at all." It is a situation where an indefinite delay so "affect[s] the environment within which the agency is allowed to act" that it equates to "a substantive restraint on the [agency's] ability to act." *Department of Treasury, BATF*, 857 F.2d at 821.

As the Supreme Court stated, courts are not to rubber stamp the decisions of an agency which are unreasonable and indefensible. *See Bureau of Alcohol, Tobacco & Firearms v. FLRA*, 464 U.S. at 97, 104 S.Ct. at 444. Thus, we hereby grant Interior's petition for review of Provision 16(c) and set aside the FLRA's decision that Provision 16(c) is negotiable, as it "is inconsistent with the plain language" of section 7106(a)(2)(A) of the FSLMRS, 5 U.S.C. § 7106(a)(2)(A), which reserves management's right to discipline employees. *Customs Service*, 854 F.2d at 1418–19; *see also Bureau of Alcohol, Tobacco & Firearms*, 464 U.S. at 97, 104 S.Ct. at 444.

### IV. CONCLUSION

For the above stated reasons, we deny Interior's petition for review of Provision 9 and grant Interior's petition for review of Provision 16(c).

*It is so ordered.*